**BROADWAY & FOURTH AVENUE REALTY COMPANY, Appellant,**

v.

**Wesley CRABTREE et al., etc., Appellees.**

Court of Appeals of Kentucky.

March 23, 1962.

As Modified on Denial of Rehearing
March 22, 1963.

S. L. Greenebaum, Charles F. Wood, Greenebaum, Barnett, Wood & Doll and Thomas C. Carroll, Louisville, for appellant.

Christopher C. Frishe, Paul E. Tierney, Legal Section, Dept. of Economic Security, Div. of Unemployment Ins., Frankfort, for appellees.

MONTGOMERY, Judge.

This is a companion case to Brown Hotel Company v. Edwards, Ky., 365 S.W.2d 299, and other cases (decided this day). The right of the Unemployment Insurance Commission to charge the reserve account of the Broadway & Fourth Avenue Realty Company with the benefits paid to Wesley Crabtree is challenged. The referee, Commission, and circuit court sustained the charge.

Wesley Crabtree worked for a few months as a "car hop" parking cars in the public storage garage operated by appellant. He was discharged on November 26, 1953, because he was not dependable.

The garage manager testified as follows:

"* * * you couldn't depend on him; you didn't know when he would be there. He would call up and say he was sick, and after so many times of that we had to have help we could depend on; and I would get reports from other fellows who said they saw him on the street after he said he was sick, and I had to let him go."

Wesley was warned repeatedly concerning his derelictions and was told that it was necessary for him to report at the proper time in order that the garage might be operated efficiently. Wesley admitted receiving the warnings and claimed that his absences were occasioned by a stomach ailment.

On the day Wesley was discharged, his supervisor said, Wesley reported for work at noon instead of at 7 a. m.; that Wesley tried, unsuccessfully, to get someone to work for him that afternoon; and that he stayed around until about 4 p. m. and then said he was sick and left. The evidence is conflicting as to whether his supervisor told him not to come back. At any rate, he went back about ten or eleven o'clock the next morning and was told that he had been replaced. Wesley undertook to contradict this testimony, but admitted that he could not say that it was not a correct version.

Wesley said that after being fired he went to work for Asplundh Tree Expert Company and worked for them until July 2, 1954, when he was laid off. The claim prosecuted here was filed July 13, 1954, against Asplundh. The Commission record of base period wages indicates that Wesley may have worked for Midwest Mortgage Company after his discharge by appellant. The same record also shows Louisville Crushed Stone Company as a prior employer. The unemployment for which benefits were paid to Wesley occurred after July 2, 1954, and after employment by one or more other employers since his discharge by appellant on November 26, 1953, and did not result from that discharge. No unemployment is claimed by reason of the discharge by appellant on November 26, 1953. There is no explanation or question raised in the record why the claim was not prosecuted against Asplundh or Midwest for the "most recent work." See KRS 341.370 and 341.530. This case characterizes the procedural informality and irregularity common in the records of such cases.

Appellant urges that under the pertinent statutes the Commission was in error in charging the benefits paid to Wesley to appellant's reserve account. KRS 341.370(1)(c) provides a benefit disqualification if the employee "has been discharged for misconduct connected with his most recent work." KRS 341.530(3) provides that the employer's reserve account shall not be charged with any benefits paid to an employee discharged for such misconduct.

■ The rule is that persistent or chronic absenteeism without notice or excuse in the face of continued warnings from the employer constitutes such misconduct as requires a denial of benefits or of the charging of benefits paid to an employer's reserve account. See cases, Annotation, 41 A.L.R. 2d, Section 3, page 1160. In Krawczyk v. Unemployment Compensation Board of Review, 175 Pa.Super. 361, 104 A.2d 338, a single day's absence in the face of a warning to be present at work on a particular day was held sufficient. Habitual tardiness in the face of warnings in reporting for work constitutes misconduct which disqualifies a claimant from receiving benefits. Chapman v. Division of Unemployment Security of Department of Labor, La.App., 104 So. 2d 201; Matthews v. Unemployment Compensation Board of Review, 188 Pa.Super. 522, 149 A.2d 187; Atlantic Freight Lines, Inc. v. Unemployment Compensation Board of Review, 189 Pa.Super. 527, 151 A.2d 822. Unless Wesley's tardiness and absenteeism were excusable by reason of his claimed stomach ailment, his discharge was justified and he was disqualified from receiving any benefits chargeable to appellant's reserve account.

■■ The only testimony of a stomach ailment was given by Wesley. The burden of proof in this respect rested on him. Brown Hotel Company v. Edwards, Ky., 365 S.W.2d 299; Broadway & Fourth Avenue Realty Company v. Allen, Ky., 365 S.W.2d 302. Wesley attributed his delinquencies to the ailment and claimed to have had a Dr. Lake treat him on the afternoon of his discharge. The evidence that he was seen walking on the streets when he had

claimed to be ill would indicate that he may have had a "walking" ailment. No one else testified to Wesley's having an ailment. His burden of proof could have been sustained by the introduction of testimony from Dr. Lake or other medical testimony. This failure and his statement that he went to work on another job indicate that there was little substance in the testimony of his claimed ailment and constitutes a failure to sustain the burden imposed upon him. It was error to charge appellant's reserve account with any benefits paid to Wesley.

The motion for an appeal is sustained and the judgment is reversed.

BIRD, J., dissents.