**G.C. SERVICES LIMITED PARTNERSHIP, Plaintiff/Appellant,**

v.

**LABOR & INDUSTRIAL RELATIONS COMMISSION, Division of Employment Security, and Shelly Bounds, Defendant/Respondents.**

No. 67932.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 16, 1996.

Robert W. Cockerham & Mary Byrne MacDonald, Brown & James, P.C., St. Louis, for Appellant.

Marilyn Green, Jefferson City, for Division of Employment Security.

John B. Keller, II, Jefferson City, for Labor & Industrial Relations Commission.

CRANDALL, Judge.

Employer, G.C. Services Limited Partnership, appeals from the judgment of the trial

court affirming the decision of the Labor and Industrial Relations Commission (Commission) which found that a former employee, Shelley Bounds, was not disqualified for unemployment compensation benefits for misconduct connected with work due to excessive absenteeism. We affirm.

The record reveals that employer hired employee on March 29, 1993. At that time, she signed employer's "Standard Operating Procedure," part of which pertained to attendance at work:

A. TARDINESS

Tardiness is defined as reporting to work up to 1 hour past starting time; more than 1 hour becomes an occasion of absence....

B. ABSENCES

An excused absence is defined as receipt of notification by the Manager of:

personal illness;

[related] doctor or dentist appointments ...;

medical disability;

leaves of absence;

jury duty; and

death in the immediate family.

ALL other absences are considered unexcused.

... Documentation may be requested by the Manager for any absence of 3 or more consecutive days.

It is the employee's responsibility to be at work every day. Should you be absent for any reason, you must call your assistant manager or manager within 1 hour of the beginning of your scheduled starting time....

You, personally, must call in every day you are absent unless specific arrangements are made with your manager.... Failure to call or report after 1 day is grounds for immediate termination.

Within any 4 consecutive months, the following will apply for incidents of unexcused absence:

first incident will result in a written warning; a second incident will result in termination.

In response to being informed about the need for reliable transportation, employee replied that her transportation was "good."

Employer's records regarding employee's attendance at work reflected the following:

| | |
|---|---|
| 7/20/93 | tardy—15 minutes |
| 7/21/93 | absent—transportation problems |
| 7/22/93 | absent—transportation problems |
| 7/23/93 | tardy—15 minutes |
| 7/26/93 | tardy—2 minutes |
| 7/27/93 through 7/29/93 | 3 day suspension for previous absences |
| 8/16/93 through 8/20/93 | absent—pregnancy complications |
| 8/23/93 | absent—employer requested doctor's release |
| 8/24/93 | absent—doctor's appointment for release |
| 8/25/93 | absent—car breakdown |
| 8/26/93 | employee terminated |

Employee and her supervisor both signed the form each time a period of absence was noted.

Employer claimed that employee's absences were unexcused according to company policy outlined in the Standard Operating Procedure. Specifically, with regard to employee's absences on the days of August 16 through August 20, employer alleged that employee did not comply with the designated reporting procedures in that she did not personally notify either her manager or assistant manager. Employee testified that her husband notified employer that she was experiencing problems with her pregnancy; and because the place where they were staying had no telephone, she was unable to walk to an outside pay telephone to notify employer herself. On August 20, employer informed her that before she could return to work, she was required to furnish a physician's release. On August 23, employee contacted employer to say she was unable to get a doctor's appointment until August 24. On August 24, she obtained a release which indicated that as long as she was not experiencing problems it was safe for her to return to work. On her way to work on August 25, her vehicle broke down and she was late in telephoning her supervisor to report her absence for that day. Employer terminated her on August 26.

Employee filed a claim for unemployment benefits. A deputy for the Missouri Division of Employment Security determined employee was not discharged due to misconduct connected with work, specifically her absenteeism. Employer appealed to the Appeals Tribunal, which affirmed the decision of the

deputy, relying on *Garden View Care Center, Inc. v. Labor and Indus. Relations Comm'n,* 848 S.W.2d 603 (Mo.App.E.D.1993). Employer then appealed to the Commission, which affirmed the Appeals Tribunal without opinion. After employer appealed to the circuit court, the order of the Commission was affirmed.

▮ An appellate court reviews the decision of the Commission and not the findings of the circuit court. *Garden View,* 848 S.W.2d at 605. The standard of review is set out in § 288.210, RSMo (1994): "In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." *See also id.* It is the function of the reviewing court to decide whether upon the whole record the Commission could have reasonably made its findings and reached its result. *Stanton v. Missouri Div. of Employment Sec.,* 799 S.W.2d 202, 203 (Mo.App.1990). Further, we must view the evidence in the light most favorable to the findings of the Commission and all reasonable inferences drawn therefrom which support the decision. *Id.* When the evidence of each party and the inferences to be drawn therefrom conflict, resolution of the conflicting inferences is the job of the Commission; and its resolution is binding on the reviewing court. *Id.*

▮ In its first point, employer charges error in the Commission's decision that employee's absences did not constitute misconduct. Section 288.050.2, RSMo (1994) allows unemployment compensation benefits to be denied for four to sixteen weeks if an employee was "discharged for misconduct connected with his or her work...."

▮ Although the statute does not define misconduct, misconduct within the meaning of the unemployment compensation act has been defined by case law as follows:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of his [or her] ployer has a right to expect of his [or her]

employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's obligations to the employer.

*Stanton,* 799 S.W.2d at 204 (quoting *Powell v. Div. of Employment Sec.,* 669 S.W.2d 47, 50 (Mo.App.1984)). Absenteeism in and of itself is not misconduct. *Garden View,* 848 S.W.2d at 606. Excessive absences, where justified by illness or family emergency and properly reported to the employer, do not constitute willful misconduct. *Id.* The purpose of the unemployment compensation act is to provide for the compulsory setting aside of an unemployment reserve to be used for the benefit of persons unemployed through no volition or fault of their own. *Stanton,* 799 S.W.2d at 203.

▮ Employer contends that employee's absences constituted misconduct connected with work. The burden is on employer to show that employee was discharged for misconduct connected with work by competent and substantial evidence. *See Garden View,* 848 S.W.2d at 606. In this case, employee's absence for an entire day occurred first on July 21 and another on July 22, both because of car trouble. She had been working since March 29, 1993, and her transportation had proved reliable from that time until those absences. No fault can be ascribed to employee for unexpected car trouble. From August 16 through 20, employee was absent because of illness related to her pregnancy. Employee's illness alone did not constitute misconduct if it was properly reported to employer. *See Garden View,* 848 S.W.2d at 606. Here, employee notified employer to the best of her ability under the circumstances through her husband, because her condition made it physically impossible for her to telephone employer herself. On August 23 and 24, she was absent because employer required her to secure a physician's release to return to work and she needed an appointment with the physician to do so. On those dates, employer prevented her from being able to work by requiring a written release from her physician in accordance with company policy. On August 25, employ-

ee's vehicle broke down on the way to work due to carburetor problems, a mechanical problem which the car had never exhibited before. In each of these incidents, the commission reasonably could have concluded that the absences resulted from situations which were beyond employee's control and were for good cause and that none of them occurred because of employee's willful or evil intent.

Employer relies upon *Stanton*, 799 S.W.2d at 202, to support its position that employee's absenteeism constituted misconduct. *Stanton*, however, is inapposite. In *Stanton*, the employee was discharged for excessive absenteeism from work, the last incident being a nine-day absence due to his being incarcerated in the municipal corrections facility for a conviction of driving without a license. *Id.* The court found that his incarceration constituted willful misconduct connected with work. *Id.* at 205. The court noted that employee's "knowing operation of an uninsured vehicle, with no driver's license, should have made [him] aware that he faced the possibility of further penalty if caught, which in turn could impact upon his employment." *Id.* at 204. In contrast to the employee in *Stanton*, employee in this case did not engage in willful conduct which would impact on her employment duties and her absences from work did not occur through any fault of her own.

■ Employer also argues that employee's absences violated its company policy regarding attendance, as articulated in its Standard Operating Procedure. It points to her repeated failures to comply with the absence and tardiness provisions, to provide proper documentation of her absences, and to personally contact her supervisor to report her absence. The determination of whether excessive absences are statutory misconduct is a separate consideration from whether employee violated the absentee policy of employer or had unexcused absences *according to that policy. Garden View*, 848 S.W.2d at 607. We held above that employee's absences were not tantamount to misconduct under the statutory scheme for determining disqualification for unemployment benefits. Thus, even assuming that her conduct failed to comport with employer's absentee policy,

employee's noncompliance, which is not deemed misconduct, is irrelevant to determining the issue of unemployment compensation benefits.

■ Employer next asserts that employee's material misrepresentation about the reliability of her transportation, which resulted in three of her unexcused absences, constituted misconduct connected with work. Here, there was no evidence that at the time employee made the representation about the reliability of her transportation on March 29, she was able to anticipate that she would have car trouble on July 21, July 22, and August 25. Her failure to predict future car problems did not amount to misconduct connected with work, because she did not knowingly make a false statement about her transportation to employer. *Compare Massey v. Labor and Indus. Relations Comm'n*, 740 S.W.2d 680 (Mo.App.1987) (employee's termination for falsifying his medical history was discharge for misconduct); *Sain v. Labor and Indus. Relations Comm'n*, 564 S.W.2d 59 (Mo.App.1978) (employee's termination for filing false insurance claims for "wife" after divorce was discharge for misconduct).

There was substantial evidence from which the commission reasonably could have concluded that employee did not act in willful disregard of employer's interests and did not deliberately violate employer's rules regarding absenteeism. Her actions did not constitute misconduct connected with work under the statute and she was not disqualified for unemployment compensation benefits. Employer's first point is denied.

In its second point, employer contends the Commission erred in basing its decision that employee was not disqualified for unemployment benefits on employee's "last act" in missing work August 16 through 20, because *Garden View* did not apply the "last act" rule and further the "last act" rule is the improper standard.

The Commission's decision in the present case is in harmony with *Garden View*, 848 S.W.2d at 603. The issue before the court in *Garden View* was whether the employee would be disqualified for unemployment compensation benefits for misconduct connected

with work due to excessive absences. *Id.* at 606. The court in *Garden View* did not address the issue of the "last act" rule, nor was it necessary to do so.

 In addition, employer challenges the application of *Garden View* to this case on the basis that employee did not properly report the absences, as the employee did in *Garden View.* The record is clear that employee reported the absences, albeit not in strict adherence to employer's policy. Given the circumstances of employee's illness, the Commission could have found that the absences were properly reported to employer. Also, noncompliance with employer's absenteeism policy is not *per se* misconduct. Employer's second point is denied.

In view of our holding, we need not address the remaining point on appeal.

We affirm.

CRAHAN, P.J., concurs in separate concurring opinion.

DOWD, J., concurs in opinion of CRANDALL, J.

CRAHAN, Presiding Judge, concurring.

I concur in the principal opinion except insofar as it may be read to suggest that employee's failure to comply with employer's absentee policy is irrelevant in determining eligibility for unemployment compensation benefits. Maj. op. at 415. There are many cogent reasons why an employer might adopt strict procedures for reporting absences. I see no reason why deliberate failure to abide by such procedures could not constitute willful disregard of the employer's interest which would justify disqualification for unemployment benefits, even if the reason for the absence itself was beyond the employee's control. In this case, however, there was evidence that employee's failure to comply with the strict letter of employer's absentee notification requirements was likewise due to circumstances beyond her control. Thus, the Commission was justified in determining that employee's failure to comply fully with employer's absentee policy did not constitute willful misconduct in this instance.