**Marilyn KELLEY, Claimant,**

**v.**

**MANOR GROVE, INC., Employer,**

**and**

**Missouri Division of Employment Security, Appellant.**

No. 70756.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 14, 1997.

Larry R. Ruhmann, Mo. Div. of Employment Security, St. Louis, for appellant.

No appearance by respondent.

REINHARD, Judge.

The Missouri Division of Employment Security (Division) appeals the decision of the Labor and Industrial Relations Commission (Commission) denying claimant's claim for unemployment compensation benefits. The Commission reversed the decision of the Appeals Tribunal, which affirmed the decision of the deputy of the Division. The deputy concluded that claimant was not disqualified because her discharge was not for misconduct connected with her employment. We reverse.

At the hearing before the appeals referee on March 11, 1996, Sondra Scheller, employer's housekeeping supervisor, testified that claimant began working as a housekeeper for employer on September 22, 1994. Scheller stated that employer's "occurrence policy" requires dismissal of an employee if he or she has 12 occurrences in a year. An occurrence consists of one absence or two tardies.

Scheller testified that claimant "called in sick" on August 17, 1995, which was her eleventh occurrence. On September 3, 1995, claimant reached the twelve occurrence threshold because she was again sick and therefore, unable to work. On that day, claimant was scheduled to work from 6:45 a.m. to 3:15 p.m. Around 6:30 a.m., she notified employer that she was ill and would not be reporting to work. Claimant was discharged on September 7, 1995, due to excessive absences and tardies. According to employer's written record of claimant's "occurrences," six of her twelve occurrences involved personal illness.

The Commission's conclusion of law states:

The competent and substantial evidence on the whole record supports a finding that claimant was discharged September 7, 1995, for misconduct connected with her work.... Employer discharged claimant for excessive absenteeism. A number of states have held that chronic absenteeism constitutes misconduct.... Excessive absenteeism hampers the operation of a business and is detrimental to an employer's interest.... The Commission concludes that claimant was discharged ... for misconduct....

One commissioner dissented from this conclusion. This commissioner stated:

[C]laimant's absence from work on September 7, 1995, was not misconduct. The court in *Garden View v. Labor and Industrial Relations Commission,* 848 S.W.2d 603, 606 (Mo.App.1993), stated that absences due to illness do not constitute misconduct if properly reported. The evidence demonstrates that claimant properly reported her absence to her employer.... [E]mployer's absentee policy is a no-fault arrangement whereby an employee is discharged upon his or her twelfth absence regardless of the reason.... Although an employer may have the right to discharge an employee for absenteeism, an employer's policy should not be the grounds for denying unemployment benefits.

It is the function of the reviewing court to decide whether the Commission could have reasonably made its findings and reached its result. *G.C. Services Ltd. v. Labor and Industrial Relations Comm'n,* 913 S.W.2d 411, 414 (Mo.App. E.D.1996). We review the whole record, including all reason-

able inferences to be drawn therefrom, in the light most favorable to the award of the Commission. *Id.* When the evidence of each party and the inferences to be drawn therefrom conflict, resolution of the conflicting inferences is the job of the Commission, and its resolution is binding on the reviewing court. *Id.* We defer to the Commission's determinations of credibility. *Westerheide Tobacco v. Labor and Industrial Relations Comm'n,* 723 S.W.2d 936, 938 (Mo.App. E.D. 1987).

On appeal, claimant contends the Commission erred in reversing the Appeals Tribunal because she was not guilty of misconduct connected with her work, which requires "willful and wanton conduct," and is therefore entitled to receive benefits. § 288.050.2, RSMo 1994.

■ Section 288.050.2, RSMo 1994, allows unemployment compensation benefits to be denied for four to sixteen weeks if an employee was "discharged for misconduct connected with his [or her] work...." The purpose of the unemployment compensation act is to provide benefits to persons unemployed through no fault of their own. *G.C. Services Ltd.,* 913 S.W.2d at 414. This statute does not define misconduct, but Missouri courts have defined misconduct in the context of the unemployment compensation act by adopting the following definition:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of his [or her] employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's obligations to the employer.

*G.C. Services Ltd.,* 913 S.W.2d at 414 (citing *Stanton v. Missouri Div. of Employment Sec.,* 799 S.W.2d 202, 204 (Mo.App. W.D. 1990)); *Powell v. Div. of Employment Sec.,* 669 S.W.2d 47, 50 (Mo.App. W.D.1984) (quoting 76 Am.Jur.2d *Unemployment Compensation* § 52 (1975)).

*Garden View v. Labor & Indus. Rel. Comm'n,* 848 S.W.2d 603 (Mo.App. E.D. 1993), is a case substantially similar to the one at hand. In that case, an employee was discharged for excessive absenteeism per the employer's attendance policy. *Id.* at 604. The Commission found that all of employee's absences were related to personal illness or family emergency. *Id.* Therefore, the Commission held the claimant had not engaged in misconduct and was entitled to receive unemployment compensation. *Id.* at 604–05. This court agreed with the Commission's interpretation of misconduct and stated that absences from work due to illness or family emergency are caused through no fault of the employee and cannot be willful misconduct, especially if properly reported to the employer. *Id.* at 606.

The *Garden View* court also noted courts of several states that have held "excessive absences, where justified by illness or family emergency and properly reported to the employer, are not willful misconduct." *Id.* (citing *Gonzales v. Indus. Comm'n of Colorado,* 740 P.2d 999, 1003 (Colo.1987); *Washington v. Amway Grand Plaza,* 135 Mich.App. 652, 354 N.W.2d 299, 302 (1984); *McCourtney v. Imprimis Technology, Inc.,* 465 N.W.2d 721, 724 (Minn.Ct.App.1991); *Tynes v. Uniroyal Tire Co.,* 679 P.2d 1310, 1313 (Okla.Ct.App. 1984); *Vester v. Bd. of Review of Oklahoma Employment Sec. Comm'n,* 697 P.2d 533, 538 (Okla.1985); *Adept Corp. v. Commonwealth, Unemployment Compensation Bd. of Review,* 62 Pa.Cmwlth. 566, 437 A.2d 109, 110 (1981)).

In a recent case, *G.C. Services Ltd., supra,* the claimant was discharged for excessive absenteeism. All of claimant's absences were due to illness or car trouble. *G.C. Services Ltd.,* 913 S.W.2d at 414–15. Following the reasoning of *Garden View,* the court stated that "[a]bsenteeism in and of itself is not misconduct" and excessive absences "justified by illness or family emergency and properly reported to the employer, do not constitute willful misconduct." *Id.* at 414. The court held the Commission "reasonably could have concluded that the absences re-

sulted from situations which were beyond employee's control and were for good cause and that none of them occurred because of employee's willful or evil intent." *Id.* at 415.

In this case, the Commission cited five cases from other states as support for its holding that excessive absenteeism constitutes misconduct and warrants disqualification from receiving unemployment benefits. In the first case, the employee was discharged for excessive absenteeism pursuant to the employer's attendance guidelines. *Mountain States Telephone and Telegraph Co. v. Industrial Comm'n,* 637 P.2d 401, 402 (Colo.Ct.App.1981). The Commission found the absences were primarily due to health problems, and therefore, the employee was entitled to full benefits. *Id.* The court agreed with the Commission's finding and stated it would be contrary to the purpose of unemployment compensation legislation to "deny compensation to an employee who, although excessively absent, is so because of incidental illness." *Id.* Although cited by the Commission, this case appears to support claimant's argument in the case at hand.

In the second case cited by the Commission, an employee was discharged for habitual tardiness and absenteeism. *Broadway & Fourth Avenue Realty Co. v. Crabtree,* 365 S.W.2d 313 (Ky.1962). The court stated that chronic absenteeism without notice or excuse constitutes misconduct, and therefore, a claimant would be disqualified from receiving benefits. *Id.* at 314. The court noted that unless the claimant's absenteeism was "excusable by reason of his claimed stomach ailment, his discharge was justified." *Id.* After finding there was "little substance in the testimony of [claimant's] claimed ailment," the court found the denial of benefits was not error. *Id.* at 315.

In the case at hand, the record shows that half of claimant's absences were due to illness. At the hearing, the employer did not dispute that claimant was discharged for absence due to health problems. In the *Crabtree* case, however, claimant's testimony regarding his illness was disbelieved. Because

the *Crabtree* court notes that illness would excuse excessive absenteeism, the "occurrences" in the instant case are not misconduct under the Kentucky court's reasoning.

*Krawczyk v. Unemployment Compensation Board of Review,* 175 Pa.Super. 361, 104 A.2d 338 (1954), is another case cited by the Commission to support its decision. In *Krawczyk,* the employee committed "willful misconduct" that justified a denial of unemployment benefits. *Id.* 104 A.2d at 339. The employer told the employee that he must report for work because his absence would hamper production. *Id.* 104 A.2d at 338. The employee failed to report for work or notify the employer of his intended absence. *Id.* Although the employee claimed his absence was due to illness, there was contradictory testimony, and the "issue of credibility ... was resolved in favor of the employer." *Id.* 104 A.2d at 339. Because this employee "deliberately remain[ed] away from his employment without cause," he was guilty of willful misconduct. *Id.*

As noted earlier, the employer in the case at hand does not allege that claimant was lying about her illness. Because credibility on this issue is not in question, *Krawczyk* differs from the instant case.

The fourth case cited by the Commission to support its decision is *Chapman v. Division of Employment Security,* 104 So.2d 201 (La.Ct.App.1958). In this case, the claimant testified that he had been late for work because "he did not have a clock and further that he could not tell the time." *Id.* at 204. The court found the "various excuses offered by [claimant] furnish[ed] no basis for justification for repeated acts of failure to report to work on time." *Id. Chapman* did not involve absenteeism that resulted from a valid excuse, such as a personal illness or family emergency.

The final case cited by the Commission is *Anderson Motor Serv., Inc. v. Review Board of Indiana Employment Security Division,* 144 Ind.App. 537, 247 N.E.2d 541 (1969). In this case, the employee was absent or worked short hours during 64 weeks of his 95 weeks

of employment. *Id.* 247 N.E.2d at 542. The employer gave the employee a final warning and then discharged the employee after he was "again absent but gave no reason whatsoever." *Id.* Although the court noted that some of his absences were excusable for health reasons, there was "no excuse whatsoever" for "an astonishing number of days." *Id.* 247 N.E.2d at 543. The court found that the discharge was based upon the employee's many repeated absences for which no excuse was given. *Id.* The court concluded that the employee was "discharged by reason of his own fault" and therefore not entitled to unemployment benefits. *Id.* 247 N.E.2d at 543–44.

After reviewing the cases cited by the Commission, we do not find that they support the Commission's decision in this case. In the case at hand, employer's "occurrence policy," which does not distinguish between excused and unexcused absences, mandates termination for any 12 "occurrences" within a year. At least six of claimant's absences or tardies were related to illness. Employer's witness admitted that claimant was discharged for an absence due to illness, which she had timely reported to employer. Employer does not allege and there is no evidence to suggest that claimant's reports of illness were false.

▮ Following the reasoning and clear holdings of *Garden View, supra,* and *G.C. Services, supra,* we hold that claimant's absence due to illness did not constitute misconduct connected with her work. The Commission's conclusion that claimant was discharged for misconduct was erroneous.

We reverse.

DOWD, P.J., and GARY M. GAERTNER, J., concur.