**Kenneth MOORE, Appellant,**

v.

**SWISHER MOWER & MACHINE CO. INC. and Division of Employment Security, Respondents.**

No. ED 78608.

Missouri Court of Appeals, Eastern District, Division One.

June 26, 2001.

Kenneth Moore, Acting Pro Se, St. Louis, MO, for appellant.

Swisher Mower, Acting Pro Se, Warrensburg, MO, for Respondent Swisher Mower.

Cynthia Ann Quetsch, Jefferson City, MO, for Respondent Division of Employment Security.

Larry Raymond Ruhmann, St. Louis, MO, for Respondent Division of Employment Security.

RICHARD B. TEITELMAN, Judge.

Kenneth Moore (Moore) appeals the decision of the Labor and Industrial Relations Commission (Commission) that he was not entitled to unemployment compensation benefits because he left work voluntarily without good cause attributable to his employer. Mr. Moore was arrested and jailed on a charge of assault which later was dismissed. He was separated from employment with Swisher Mower & Machine Company, Inc. (Employer) when, during his incarceration, he failed for three consecutive days to report his work absences as required by Employer's absenteeism policy. Because we find that Moore did not leave work voluntarily but instead was discharged for "misconduct connected with work" within the meaning

of Section 288 .050.2 RSMo (2000),[1] we reverse and remand with directions.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

At the time of his separation from employment, Mr. Moore had worked at Employer's plant as a boxer and assembler for approximately ten months. On November 11, 1999, sometime after Moore had left work that day, he was arrested and jailed on an outstanding charge of assault. He was unable to post bail and remained incarcerated for several months. He maintained his complete innocence of the charges, which were eventually dismissed.

As part of its absenteeism policy, Employer had a written rule requiring employees to call in each day if they had to be absent from work; the written policy also provided that failure to follow this rule and report absences for three consecutive work days would be grounds for termination. The first day Moore was scheduled to return to work following his arrest was November 15, 1999. He was unable to return to work that day due to his incarceration. On that day, as well as each of the following two days, Moore failed to phone Employer from jail or otherwise notify Employer that he would be absent from work. On November 17, 1999, Moore failed to attend work or report his absence to Employer for the third consecutive day, and Employer discharged him on that date.

After the charges were dropped and Moore was released from jail, he filed a claim for unemployment benefits. On June 20, 2000, the Division of Employment Security (Division) issued a deputy's determination that Mr. Moore was disqualified for benefits for five weeks because he was discharged by Employer for "misconduct connected with work" specifically, that he was absent from work for three consecu-

---

1. All further statutory references are to RSMo (2000).

tive days and "the absences were not reported."

Moore appealed the deputy's determination, which resulted in a hearing before an Appeals Referee. Mr. Moore testified, inter alia, that he was aware of Employer's rule that employees were expected to call in if they were going to be absent. He stated that phone privileges were extremely restricted and limited in the jail, which made it difficult to call, and that this was why he did not call Employer between November 15–17. He further testified, however, that despite the difficulties with phone access, he was able to talk with a family member by phone during the first few days in jail—yet did not ask his brother to communicate his absences for him to Employer. The following exchange occurred at the hearing:

Q. Now, Mr. Moore, did you during these—the first few days that you were incarcerated, did you talk with anybody else by phone?

A. At Swisher's?

Q. No, I mean did you talk to family or anything like that?

A. I talked to—I talked to my brother.

Q. Okay. I mean, did you—did you have—instruct your brother to call the employer?

A. No, I didn't.

Q. Okay. Why not do that?

A. Well, because my business at hand, what I was trying to do was trying to get get out of this jail.

Q. Okay.

A. And that was—what had priority on my mind is trying, you know, get out of that jail.

Also testifying at the hearing was Employer's human resources manager. She testified, unequivocally, that Mr. Moore did not quit and was discharged. The following exchange occurred:

Q. Do you know what the last day would have been that Mr. Moore actually performed work for you folks?

A. We show the last day worked as November 11, 1999.

Q. All right. Did he quit his job?

A. No, he did not.

Q. Was he discharged?

A. Yes, he was.

Q. And when would that have been communicated to him?

A. The termination paperwork was actually filled out on November 17, 1999. I don't believe it was communicated to him on that day. I think the next time that he came in to work is when it was communicated and I'm not aware of that date.

Q. Okay. So, it was effective November 17?

A. Correct.

Q. Okay. Ms. Chaney, can you tell me why it is that effective date Mr. Moore was discharged?

A. The reason for termination was that he didn't call or come into work for three days.

After hearing this evidence the Appeals Referee issued his decision, modifying the deputy's determination and finding that Mr. Moore was not discharged but rather that he voluntarily left his work on November 15, 1999. The relevant portions of the Appeals Referee's findings and conclusions state:

FINDINGS OF FACT:

[Claimant] was aware of the employer's rule which required him to call in each day that he had to be absent. Claimant last worked on November 11, 1999. He was then arrested before he could next come to work on November

15, 1999. Despite his knowledge of the employer's rule, the claimant did not even attempt to call the employer until some time after November 17, 1999. He communicated with his brother during the period November 15 through 17, 1999, but never asked him to talk to the employer or call in his absences. The claimant denied his guilt regarding the underlying assault charges. The alleged incident had no connection with the workplace or any co-workers. The claimant was released from jail on April 19, 2000.

## LAW:

The first issue facing this Tribunal is whether to characterize the claimant's separation from employment as a quit or a discharge. The claimant denies any guilt connected with the assault charge for which he was jailed. Therefore, this Tribunal is persuaded that his incarceration (and related absences from the workplace) was not voluntary in the sense that he committed some action which he could reasonably expect to result in his discharge or the abandonment of his job. On the other hand, even though the claimant had some opportunities to communicate with the employer during the time he was in jail, he failed to seize those opportunities. His decision not to communicate with the employer is an action over which he had control. Thus, this Tribunal concludes that his failure to communicate with the employer resulted in the voluntary separation from his job for the employer. Therefore, this Tribunal concludes that

the claimant voluntarily left his employment effective November 15, 1999.

Accordingly, pursuant to Section 288.050.1, the Appeals Referee determined that Mr. Moore was disqualified for any unemployment benefits at all until he had earned wages for insured work equal to ten times his weekly benefit after November 15, 1999.[2] Mr. Moore appealed the decision of the Appeals Referee to the Commission. The Commission issued its order affirming the decision of the Appeals Referee and adopting the decision as its own. Mr. Moore now appeals the Commission's order to this Court.

## II. *DISCUSSION AND DECISION*

### 1. *Motion to Dismiss*

■■■ Preliminarily, we note that Division has filed a motion to dismiss Mr. Moore's appeal, arguing several violations by him of the briefing requirements of Rule 84.04, especially the requirements for points relied on set forth in Rule 84.04(d)(2). Generally, pro se litigants such as Mr. Moore must adhere to the same procedural requirements as lawyers, and are not entitled to any special indulgences they would not have received had they been represented by counsel. *England v. Regan Marketing, Inc.*, 939 S.W.2d 62, 65 (Mo.App. S.D.1997). Nevertheless, appellate courts are reluctant to exercise their discretion to dismiss an appeal for technical deficiency under Rule 84.04 unless the deficiency is so serious that it impedes disposition on the merits. *Gray v. White*, 26 S.W.3d 806, 816 (Mo.App. E.D.1999). Here, that is not the case. Although Mr. Moore's two points relied on

---

**2.** The question of whether Moore's separation from employment is properly deemed to be a voluntary quit rather than a misconduct discharge is of more than mere theoretical interest; it makes a considerable practical difference as well. If it is the former then he is ineligible for any benefits; if it is the latter then, as the deputy initially determined, he would be disqualified for only five weeks pursuant to section 288.050.2. Cf. *City of Kansas City v. Arthur*, 998 S.W.2d 870, 876 (Mo.App. W.D.1999).

are both technically deficient, we are able to ascertain the issues and arguments. Division's motion to dismiss the appeal is denied.

## 2. Standard of Review and Governing Law

Our standard of review is governed by Section 288.210, which states in pertinent part: "The findings of the Commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." See also *Burns v. Labor & Industrial Relations Commission,* 845 S.W.2d 553, 554–555 (Mo. banc 1993); *Geiler v. Missouri Labor and Industrial Relations Commission,* 924 S.W.2d 606, 608 (Mo.App. E.D. 1996). Thus, the decision of the Commission in unemployment compensation cases will be disturbed on appeal only where it is unsupported by competent substantial evidence or unauthorized by law. *Division of Employment Security v. Gardner–Denver Machinery, Inc.,* 941 S.W.2d 13, 14 (Mo. App. W.D.1997). We view the evidence in the light most favorable to the findings of the Commission. *Tutwiler v. Fin–Clair Corp.,* 995 S.W.2d 497, 499 (Mo.App. E.D. 1999). We are not bound by the Commission's conclusions on questions of law, or its application of law to the facts. *Kennett Bd. Of Public Works v. Shipman,* 15 S.W.3d 792, 795 (Mo.App. S.D.2000).

As "a guide to the interpretation and application" of the Missouri Employment Security Law, our legislature has declared it "the public policy of this state" to set aside unemployment reserves for the benefit of persons unemployed through no fault of their own. Section 288.020.1. Further, Section 288.020.2 directs that the law "shall be liberally construed" so as to accomplish that purpose. *Sokol v. Labor and Industrial Relations Commission,* 946 S.W.2d 20, 23 (Mo.App. W.D.1997). "In keeping with this policy, disqualifying provisions in the law are strictly construed against the disallowance of benefits." *Miller v. Kansas City Station Corp.,* 996 S.W.2d 120, 122–123 (Mo.App. W.D.1999) (citing *Missouri Division of Employment Security v. Labor & Industrial Relations Commission,* 651 S.W.2d 145, 148 (Mo. banc 1983)).

## 3. Did Mr. Moore Voluntarily Leave Employment?

The first issue is whether the Commission was correct in determining that Mr. Moore voluntarily left his employment rather than being discharged. In his first point on appeal, Moore argues that he did not quit but rather was fired. Section 288.050.1 provides that a claimant is not eligible for unemployment benefits if he voluntarily leaves employment without good cause attributable to the work or employer. It states, in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or other benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer. . . .

Section 288.050.1 A person leaves work voluntarily, as opposed to being discharged, when he leaves of his own accord and volition. *Worley v. Division of Employment Security,* 978 S.W.2d 480, 483 (Mo.App. W.D.1998). In making that determination, "while the terms that the parties use to describe cessation of an employ-

ee's employment may be instructive, the relevant facts and circumstances are controlling." *Id.*

### (a) *Viewed as a Question of Fact*

Ordinarily, the Commission's determination of whether an employee left his employment voluntarily or was discharged is a factual question. *Bunch v. Division of Employment Security,* 965 S.W.2d 874, 877 (Mo.App. W.D.1998); *Sokol,* 946 S.W.2d at 24. In the present case, there is no competent, substantial evidence in the record to support the Commission's finding that Mr. Moore voluntarily left his employment. All of the evidence—including the *unequivocal* testimony of Employer's witness—points to the conclusion that he was discharged, for violating Employer's absenteeism policy by failing to either report for work or call in his absences for three consecutive days. Though the Commission is the trier of fact, it is not free to arbitrarily ignore relevant evidence that is completely undisputed and neither shown to be disbelieved or noncredible. *Geiler,* 924 S.W.2d at 609.

### (b) *Viewed as a Question of Law*

The Division argues, however, that this is the rare case where the issue of whether a claimant should be deemed to have voluntarily left his employment rather than being discharged is really a question of *law,* rather than fact. Acknowledging that the essential facts are undisputed, Division argues in its brief that by contesting the Commission's conclusion that his separation from employment amounted to a voluntary quit rather than a discharge, Mr. Moore really "is challenging the Commission's interpretation of the Missouri Employment Security Law." Further, Division argues, we should defer to the Commission's decision because the Commission's interpretation of the statute "is entitled to great weight."

We acknowledge that in this particular case the issue may well be more properly characterized as one of law rather than fact. "When there is no factual dispute, and the issue is the construction and application of the statute to virtually uncontroverted facts, the issue is one of law." *Division of Employment Security v. Taney County District R–III,* 922 S.W.2d 391, 393 (Mo. banc 1996); see also *Stover Delivery Systems, Inc. v. Division of Employment Security,* 11 S.W.3d 685, 688 (Mo.App. W.D.1999). This does not bolster the Division's position, however, for in such a case the reviewing court "is not bound by the Commission's conclusions of law, nor its application of law to the facts." *Taney,* 922 S.W.2d at 393. Rather, when the issue is one of law this Court does not defer to the Commission but instead reviews the issue *de novo* and independently. *Miller,* 996 S.W.2d at 122; *Yellow Freight System v. Thomas,* 987 S.W.2d 1, 3 (Mo. App. W.D.1998). This remains true notwithstanding the fact that the Commission's interpretation of the statute is entitled to considerable weight. *Roberts v. Labor and Industrial Relations Commission,* 869 S.W.2d 139, 141–142 (Mo.App. W.D.1993). Though it is given some weight, the Commission's interpretation is not conclusive. *Peerless Fixture Company v. Keitel,* 355 Mo. 144, 195 S.W.2d 449, 452–453 (1946).

Thus, the standard of review is *de novo* when the issue, as it is here, is "whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment." *Sokol,* 946 S.W.2d at 24. Applying that standard to the facts of this case, we hold that the Commission erred in determining that Mr. Moore's discharge should be considered a voluntary quit merely because he failed to comply with the employer's work rule requiring that

employees call in to report their absences. Though, as discussed in the next section of this opinion, such inaction by Mr. Moore may constitute "misconduct connected with work" that at least *partially* disqualifies him for unemployment benefits, it does not alter the fundamental nature of his separation from employment. The voluntary quit provision of the Missouri Employment Security Law, like its other disqualifying provisions, must be strictly and narrowly construed in favor of finding that an employee is entitled to compensation. *Sokol,* 946 S.W.2d at 24. Here, the plain meaning of the statutory words "left work voluntarily" simply cannot be construed to include what is obviously a *discharge* for failing to comply with a work rule. Thus, whether the issue is viewed as either a question of fact or a question of law, it is clear that Mr. Moore didn't quit; he was fired. Point I is granted.

### 4. Did Mr. Moore's Inaction Amount To Statutory Misconduct?

■ The second issue in this case is whether Mr. Moore was discharged for conduct sufficiently egregious to be considered "misconduct" within the meaning of Section 288.050.2, thereby disqualifying him from receiving unemployment benefits for a limited time as the deputy initially determined. Moore contends the Commission erred not only in determining that he voluntarily quit his job, but also that it should have reversed the deputy's initial determination that he was discharged for misconduct.

■ Here, although the Commission did not find that Mr. Moore's incarceration per se was either misconduct or a voluntary leaving of employment,[3] the record shows that he was fired for violating the provision of Employer's absenteeism policy requiring employees to call in and report absences on days when they needed to be absent from work. This Court has repeatedly held that absences from work which occur through no fault of the employee, due to health, family emergency or other legitimate reasons beyond the employee's control, do not constitute willful "misconduct" within the meaning of Section 288.050.2. *Tutwiler,* 995 S.W.2d at 499; *Gardner Denver,* 941 S.W.2d at 15; *Kelley v. Manor Grove, Inc.,* 936 S.W.2d 874, 878 (Mo.App. E.D.1997); *G.C. Services Ltd. Partnership v. Labor & Industrial Relations Commission,* 913 S.W.2d 411, 414 (Mo.App. E.D.1996); *Garden View Care Center, Inc. v. Labor and Industrial Relations Commission,* 848 S.W.2d 603, 607 (Mo.App. E.D.1993). However, in virtually all of these cases the Court has qualified this rule by noting the importance of an employee's obligation to *properly report* any impending absences in accordance with an employer's reasonable policy. See *Tutwiler,* 995 S.W.2d at 500; *Kelley,* 936 S.W.2d at 875; *G.C.,* 913 S.W.2d at 416; *Garden View,* 848 S.W.2d at 606. Our emphasis on the importance of properly reporting absences has a sound basis in both logic and the underlying statutory policy, which was compellingly cap-

**3.** In this respect, the Commission's decision was proper and correct. While incarceration can rise to the level of statutory misconduct for unemployment compensation purposes depending upon the surrounding circumstances, see *Stanton v. Missouri Division of Employment Security,* 799 S.W.2d 202, 204 205 (Mo.App. W.D.1990), it does not when there is no indication the employee was in any way at fault. See generally, 76 Am Jur 2d *Unemployment Compensation,* § 95 (1992). See also *id.,* § 108. Here, Mr. Moore steadfastly maintained his innocence of the assault charges which led to his arrest; the charges were eventually dropped; and there is nothing in the record to suggest that he was at fault in regard to his arrest and incarceration.

tured by the separate concurring opinion in *G.C., supra:*

> There are many cogent reasons why an employer might adopt strict procedures for reporting absences. I see no reason why deliberate failure to abide by such procedures could not constitute willful disregard of the employer's interest which would justify disqualification for unemployment benefits, even if the reason for the absence itself was beyond the employee's control. In this case, however, there was evidence that employee's failure to comply with the strict letter of employer's absentee notification requirements was likewise due to circumstances beyond her control. Thus, [employee's failure to comply] did not constitute willful misconduct in this instance.

*G.C. Services Ltd. Partnership v. Labor & Industrial Relations Commission,* 913 S.W.2d at 416 (Crahan, P.J., concurring).

In this case, although no doubt the circumstances related to his incarceration were somewhat difficult, the record nevertheless is undisputed that Mr. Moore *could have* communicated with Employer during November 15 through 17, 1999 to call in or otherwise report his absences during those days, but did not do so. As the Commission found, "his decision not to communicate with the employer is an action over which he had control." We conclude that this action constituted work-connected "misconduct" within the meaning of Section 288.050.2, justifying the deputy's initial determination that Mr. Moore was disqualified for benefits for a period of five weeks. Employer's rule requiring notification of impending work absences was a reasonable one. Deliberate violation of an employer's reasonable work rule constitutes disqualifying misconduct. *City of Kansas City v. Arthur,* 998 S.W.2d at 874. Failure to report absences for several consecutive days amounts to substantial disregard of an employer's interest so as to constitute willful misconduct. *Savage v. Com., Unemployment Comp. Bd. of Review,* 89 Pa.Cmwlth. 61, 491 A.2d 947, 949 (1985).

For the foregoing reasons, we hold that Mr. Moore's actions did not constitute a voluntary leaving of his employment within the meaning of Section 288.050.1, but did constitute statutory "misconduct" within the meaning of Section 288.050.2. The decision of the Commission is reversed, and the case is remanded to the Commission with instructions to (1) reinstate and adopt the original deputy's determination in this matter dated June 20, 2000, and (2) consistent with this opinion, calculate and determine the proper amount of unemployment compensation benefits to which Mr. Moore is entitled.

ROBERT G. DOWD, Jr., P.J. and MARY RHODES RUSSELL, J., concur.