WESTERN KENTUCKY COCA–COLA
BOTTLING COMPANY, INC.,
Appellant

v.

Trevor RUNYON and Kentucky
Unemployment Insurance
Commission, Appellees.

No. 2011–SC–000784–DG.

Supreme Court of Kentucky.

June 20, 2013.

Rehearing Denied Oct. 24, 2013.

Frank Hampton Moore, Jr., Matthew Porter Cook, for Appellant.

Amy F. Howard, for Appellee, Kentucky Unemployment Insurance Commission.

Opinion of the Court by Justice CUNNINGHAM.

Appellant, Western Kentucky Coca–Cola Bottling Company, Inc., ("WKCC") is a soft drink distributorship. Appellee, Trevor Runyon, was employed at WKCC as a night loader from June, 2006 to March 26, 2009. He typically worked five shifts per week, with his days off being Wednesday and Saturday.

However, for several weeks preceding March 26, 2009, Runyon had been coming to WKCC on Wednesdays to work extra hours. Though a normal shift was approximately eight to ten hours, Runyon would work the first six hours. His shift supervisor, Cecil Webb, explained that this arrangement was permitted so that Runyon could accumulate enough hours per week to maintain his full-time status. Thus, for over a month, Runyon had worked at WKCC on Wednesdays from noon to about 6 p.m.

Runyon's employment with WKCC was not entirely harmonious. He was suspended for three days in 2008 due to tardiness and absenteeism. His supervisor also complained that Runyon was difficult to work with and could not get along with his co-workers.

On Sunday, March 22, 2009, Runyon was scheduled to work. Runyon testified that he called the weekend supervisor, Justin Mercer, that morning and informed Mercer that he could not work due to illness. Runyon also missed his scheduled shift the following day. Again, Runyon claims he notified Webb by telephone. Webb denies ever speaking with Runyon that day. Webb also testified that he asked Mercer if Runyon had called in the previous day and Mercer told him that Runyon had not.

On Tuesday, March 24, 2009, Runyon worked his normally scheduled shift. Webb testified that Runyon approached him following the Tuesday shift and asked if he could work the next day. According to Webb, Runyon specifically wanted to make up the hours he had missed on Sunday and Monday. Webb agreed, though he reprimanded Runyon for not having called in to report his absence on Sunday or Monday. Further, Webb testified that Runyon asked to work all day on Wednesday to make up for the missed hours. Again, Runyon denies this conversation and testified that he arrived at work on Wednesday per his recent habit.

On Wednesday, March 25, 2009, Runyon arrived at work at the start of the shift. However, he clocked out approximately two hours after the shift began. When Webb inquired, Runyon said he was leaving. He told Runyon that he could not "come and go as he pleased." Runyon did not reply, except to say he was "taking care of business," and offered no specific explanation as to why he was leaving before the shift had ended.

The following day, Thursday, March 26, 2009, Runyon again arrived at WKCC for his normally scheduled shift. Webb immediately discharged Runyon for his unexcused absences, chronic tardiness, and leaving the previous day without providing a reason. Runyon filed for unemployment benefits that same day.

The Division of Unemployment Insurance originally determined that Runyon had not been discharged by WKCC for

misconduct. WKCC appealed. A hearing was held and the Unemployment Appeals referee set aside the decision. The referee concluded that Runyon had been discharged for misconduct related to his employment. Runyon appealed the referee's decision to the Kentucky Unemployment Insurance Commission (the "Commission"), which reversed.

WKCC then appealed to the Warren Circuit Court. WKCC properly filed a complaint, naming both the Commission and Runyon as defendants pursuant to KRS 341.450. The Commission answered the complaint, but Runyon never responded. The Warren Circuit Court entered a default judgment against Runyon and then simultaneously entered an order affirming the decision of the Commission on the merits.

WKCC then appealed to the Court of Appeals, which affirmed the Warren Circuit Court. The Court of Appeals concluded that the Commission's decision was based on substantial evidence. Further, the Court of Appeals determined that the circuit court's order affirming the Commission modified the default judgment, thereby rendering it a nullity. This Court granted discretionary review. For the reasons set forth herein, we reverse.

### Default Judgment

■ We first turn to the issue of the default judgment. WKCC argues that the default judgment disposed of the case in its favor and effectively bars appellate review of the matter by the circuit court, the Court of Appeals, and this Court. The Court of Appeals concluded that the default judgment was essentially vacated by the trial court's order affirming the Commission's decision. We disagree with both positions.

■ The order granting default judgment, pursuant to CR 55.01, was not proper because Runyon was never in default. An appeal from an adverse decision of the Commission is a special statutory proceeding. KRS 341.450. *See also Kentucky Unemployment Ins. Com'n v. Carter,* 689 S.W.2d 360, 361 (Ky.1985). As such, "the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules [of Civil Procedure]." CR 1(2).

The procedures set forth in KRS 341.450 do not require Runyon to file an answer. KRS 341.450(1) directs the aggrieved party to file a complaint "against the [C]ommission." KRS 341.450(2) directs the Commission to file its answer within twenty days of service of the complaint. Though Runyon was properly named a defendant, as required by KRS 341.450(1), there is no requirement that any defendant other than the Commission answer the plaintiff's complaint.

Clearly, the procedures set forth in KRS 341.450 are inconsistent with the pleading requirements of CR 7.01. CR 1 directs that the statutory procedures prevail. As such, Runyon was not required to answer WKCC's complaint. Therefore, he did not "fail[ ] to plead or otherwise defend." CR 55.01. Default judgment was not proper under these circumstances and was void ab initio. Accordingly, the order granting default judgment is hereby vacated.

### The Commission's Order

■ We next turn to the merits of the Commission's order. The Commission is not bound by the referee's decision; it reviews the matter de novo and may affirm, modify, or set aside the referee's decision based on the evidence submitted. KRS 341.430(1). On appeal, we first review the Commission's findings of fact, which are binding if they are supported by substantial evidence of probative value. *Kentucky Unemployment Ins. Com'n v. Cecil,* 381 S.W.3d 238, 245 (Ky.2012). We

then determine whether the correct rule of law was applied to the facts. *Id.*

Looking first to the Commission's factual findings, we acknowledge that Webb and Runyon, the only two witnesses to testify, disputed several key events. Thus, there was evidence to support differing conclusions with respect to whether or not Runyon reported his absences on Sunday and Monday, and whether or not Runyon agreed to work the entire shift on Wednesday. Even so, the Commission made two factual findings which were not supported by substantial evidence on the record.

First, the Commission found that Runyon was not "advised that his job was in jeopardy" at the time of his 2008 suspension. In fact, Runyon himself testified that he was aware that further disciplinary issues would result in his termination. The hearing officer asked Runyon if he was "told that anything, any incidents after [the suspension] would result in your discharge." Runyon responded "yes," though he did not specify how he learned of this circumstance. He also confirmed his general familiarity with the company's progressive discipline system and the fact that a suspension was the final level of discipline before termination. The fact that Webb did not recall having a specific conversation on this topic with Runyon is largely immaterial. What is dispositive is whether Runyon was aware at the time of his suspension that any further disciplinary problems would result in his termination, which he acknowledged. The evidence simply does not support the conclusion that Runyon was unaware that he would be terminated upon further disciplinary problems.

Also, there is no substantial evidence to support the conclusion that Runyon was not scheduled to work on Wednesday, March 25. It is true that Runyon was not *normally* scheduled to work on Wednes-

days. Further, Runyon and Webb dispute whether or not they had a specific conversation confirming that Runyon would work the entire shift on Wednesday, March 25.

■ However, everyone acknowledged that Runyon had made a habit of working on Wednesdays until 6 p.m. for the preceding month. It is also undisputed that WKCC allowed Runyon to work on Wednesdays so that he could pick up enough hours to maintain his full-time status. In light of his absence the two days prior, circumstances strongly support Webb's testimony that Runyon intended to work the entire shift on Wednesday to "make-up" these missed hours. But even accepting Runyon's account, he had made such a practice of working on Wednesdays that it was no longer necessary to specifically inform Webb in advance. Thus, regardless of whether or not a specific conversation was held, the record supports only one conclusion; i.e., Webb expected Runyon to work on Wednesday, March 25, for the majority of, if not the entire, shift. The Commission's factual finding to the contrary is not supported by the evidence.

■ These evidentiary deficiencies were compounded by the fact that the Commission applied the incorrect law to this matter. As the Commission initially, and correctly, notes, an employee's absenteeism can be grounds for disqualification for two reasons enumerated in KRS 341.370(6): "unsatisfactory attendance if the worker cannot show good cause for absences or tardiness" and "knowing violation of a reasonable and uniformly enforced rule of an employer." An employee may be disqualified under the latter theory if he fails to provide notice of his absence, even those for good cause. The Commission concluded that Runyon was not disqualified under either theory.

■ If the employee is discharged for his absenteeism, the employer bears the burden of establishing by a preponderance of the evidence that the employee's attendance was unsatisfactory. *Brown Hotel Co. v. Edwards,* 365 S.W.2d 299, 301 (Ky.1962). If the employer can so prove, the burden shifts to the employee to establish that there was good cause for the absences. *Id.* Here, the Commission concluded that WKCC failed to establish that Runyon's attendance was unsatisfactory. It stated:

Although [Runyon] was suspended in June 2008, for alleged absenteeism and/or tardiness, the captioned employer could provide no dates or details of the alleged occurrences which culminated in the warning. It is also noted that [Runyon] was not discharged in June 2008, nor was he advised that his job was in jeopardy due to (alleged) absenteeism.

. . .

The only absences on record are [Runyon's] absences of March 22, 2009, and March 23, 2009. This is insufficient to show the claimant's attendance was unsatisfactory. As the employer has failed to meet its burden in establishing the claimant's attendance as unsatisfactory, there is no need to analyze the reasons for [Runyon's] absences.

For the reasons noted above, these conclusions of law rest on two faulty evidentiary findings. First, Runyon was scheduled to work on Wednesday, March 25; therefore, WKCC presented three unexcused absences, not two. Second, Runyon was aware that any further disciplinary issues following his suspension would result in his termination.

■ The Commission also misstates the law in concluding that even two absences were insufficient. There is no such bright-line rule. The general rule is that "persistent or chronic absenteeism without notice or excuse in the face of continued warnings from the employer constitutes such misconduct as requires a denial of benefits or of the charging of benefits paid to an employer's reserve account." *Broadway & Fourth Ave. Realty Co. v. Crabtree,* 365 S.W.2d 313, 314 (Ky.1963). In *Crabtree,* our predecessor court noted that even "a single day's absence in the face of a warning to be present at work on a particular day" may be sufficient. *Id.* Whether or not sufficient absences have been proven must be considered in light of the particular circumstances of the employment.

■ Analyzed under the applicable law, WKCC clearly met its burden. Runyon had been suspended less than a year earlier for his attendance problems and admits he was aware that any further issues would result in his dismissal. By Webb's account, Runyon was warned again when he did appear at work on Tuesday, March 24. Regardless, there is no dispute that immediately before leaving early on Wednesday, Webb warned Runyon that he could not "come and go as he pleased." Thus, even by Runyon's version of events, he clocked out on Wednesday without providing adequate justification and "in the face of a warning."

■ Having satisfied its burden of establishing unsatisfactory attendance, the burden shifted from WKCC to Runyon to prove that the absences were for good cause. Runyon presented absolutely no evidence to substantiate the claim that he was sick on Sunday and Monday or that he had "school business" to attend to on Wednesday. Thus, Runyon should have been disqualified on the basis of unsatisfactory attendance.

■ The Commission also erred in concluding that Runyon did not knowingly violate WKCC's policies by failing to provide a reason for leaving work early on Wednesday. Runyon confirmed his knowledge of this policy. Yet, the Commission reasoned that Runyon was not required to explain his early departure because he

wasn't scheduled to work that day. Again, this finding is not supported by substantial evidence and Runyon should have been required to provide a reason for his absence. Instead of providing such reason, Runyon merely told Webb that he needed to "take care of business." This exceedingly vague reason is inadequate under any circumstance. The evidence established that Runyon violated WKCC's attendance policy and he should have been disqualified on this basis.

**Conclusion**

For the foregoing reasons, the opinion of the Court of Appeals and the judgment of the Warren Circuit Court are hereby reversed. This matter is remanded to the Kentucky Unemployment Insurance Commission with directions to enter an order consistent with this opinion.

MINTON, C.J., ABRAMSON, KELLER, NOBLE and VENTERS, JJ., concur. SCOTT, J., respectfully dissents and stands with the decisions of the Kentucky Unemployment Insurance Commission, the Warren Circuit Court, and the Kentucky Court of Appeals.