**Leroy NOAH, Appellant,**

v.

**LINDBERGH INVESTMENT, LLC and Division of Employment Security, Respondents.**

**No. ED 94029.**

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 7, 2010.

Martin L. Perron, St. Louis, MO, for appellant.

Lindbergh Investment, LLC (pro se) c/o K. Bahakita, Bridgeton, MO.

Jeannie D. Mitchell (Div. of Employment Security) Jefferson City, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Leroy Noah (Claimant) appeals from the decision of the Labor and Industrial Relations Commission (Commission) finding him ineligible for unemployment compensation benefits because he voluntarily left his employment without good cause attributable to his work or his employer. Because the undisputed evidence before the Commission showed that Claimant did not voluntarily leave his work, but rather was discharged for misconduct, we reverse and remand to the Commission with instructions to modify its decision in a manner consistent with this opinion.

### Background

On August 7, 2009, the Deputy of the Division of Employment Security (Division) denied Claimant's claim for unemployment benefits after determining that Claimant had voluntarily left his work without good causes attributable to his work or his employer, Lindbergh Investments, d/b/a Best Western (Employer). Claimant filed an appeal with the Division's Appeals Tribunal contending that he did not voluntarily leave his work, but was discharged. The Appeals Tribunal held a hearing where the following undisputed evidence was adduced:

Claimant worked for Employer as a shuttle driver transporting passengers between Employer's hotel and the airport. Claimant customarily worked the 4 a.m. to 3 p.m. shift on Saturdays and Sundays.

Claimant was scheduled to work on May 23 and 24, 2009, which fell on the Saturday and Sunday of Memorial Day weekend. On April 26, 2009, Claimant requested those days off. On or about May 20, a supervisor called Claimant and informed him that he could not grant Claimant's request for leave. The supervisor explained that another employee with more seniority had requested the same days off and that no one else was able to work Claimant's shift. Claimant acknowledged that his supervisor had the authority to deny him the time off.

The following day, on May 21, 2009, Claimant faxed Employer a message stating, "I will not be in on May 23 + 24, 2009. I am sick." Claimant admitted that he did not know whether he would actually be sick on May 23 and 24. Rather, Claimant sent the letter so that he could have the weekend off to take his grandson to visit colleges. Claimant did not appear at work for his May 23 and 24 shifts.

The following Friday, May 29, 2009, the general manager called Claimant and told him that she needed to meet with him to discuss his failure to report to work on May 23 and 24. At the time Claimant received the phone call, he was at is other part-time job at a funeral home where he worked on Fridays. Claimant informed the general manager that he could not leave his job to come in and talk that day, but that he could meet with her the following day. The general manager told Claimant that either he "come out here right now to talk to me" or she would not put him on the schedule. Claimant replied, "I can't come." Claimant never met with the general manager.

Thereafter, the general manager stopped placing Claimant on the schedule. At first, Claimant continued to show up at work and check the schedule. However, on June 13, Claimant learned that Employer had hired a new driver, and, noticing that the general manager had not sched-

uled him any shifts, Claimant assumed he was fired. Thereafter, Claimant filed for unemployment benefits.

Based on the foregoing evidence, the Appeals Tribunal determined that Claimant voluntarily left his work without good cause attributable to his employer. The Commission adopted the Appeal's Tribunal's decision and denied Claimant unemployment compensation benefits. Claimant appeals.

### Standard of Review

On appeal from a decision in an unemployment benefits proceeding, this court may modify, reverse, remand for rehearing, or set aside the award upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Mo.Rev.Stat. § 288.210 (Cum.Supp.2005); *Korkutovic v. Gamel Co.*, 284 S.W.3d 653, 655–56 (Mo.App. E.D. 2009).

▇ In reviewing the Commission's decision, we are not bound by the Commission's conclusions of law or its application of the law to the facts. *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). Where, as here, the facts are not in dispute, and the issue is the construction and application of a statute, the issue is one of law that this court reviews *de novo. Id.*; *see also Moore v. Swisher Mower & Machine Co., Inc.*, 49 S.W.3d 731, 738 (Mo.App. E.D.2001).

### Discussion

In his sole point on appeal, Claimant contends that the Commission erred in denying him unemployment benefits. Specifically, Claimant first asserts that sufficient competent evidence showed that he did not leave his work voluntarily. Second, Claimant claims that the evidence showed that Employer discharged him and that the discharge was not for any act or omission which would constitute misconduct to justify a denial of benefits. Upon our review of the record, we agree that the Claimant did not voluntarily leave his employment, but find that Claimant is nonetheless disqualified from unemployment benefits because the undisputed facts showed that Claimant was discharged for misconduct.

▇ Under Section 288.050.1(1), a claimant is not entitled to unemployment benefits if he or she "has left work voluntarily without good cause attributable to such work or to the claimant's employer." Mo.Rev.Stat. § 288.050.1(1) (Cum.Supp. 2005). "The voluntary quit provision of the Missouri Employment Security Law, like its other disqualifying provisions, must be strictly and narrowly construed in favor of finding that an employee is entitled to compensation." *Moore*, 49 S.W.3d at 739. An employee leaves work voluntarily when he "leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer." *Lindsey v. Univ. of Mo.*, 254 S.W.3d 168, 171 (Mo. App. W.D.2008) (quotation omitted). Conversely, "an employee will not be held to have left work voluntarily when the employer decides to end the employment relationship." *Davis v. School of the Ozarks, Inc.*, 188 S.W.3d 94, 100 (Mo.App. S.D. 2006). Likewise, we will not find that an employee left work voluntarily when the employer obviously discharged the employee for failing to comply with a work rule. *Moore*, 49 S.W.3d at 739.

▇ There was insufficient evidence in the record to support the Commission's finding that Claimant voluntarily left his employment. The uncontroverted facts revealed that Employer ceased placing

Claimant on the schedule after Claimant did not report to work on May 23 and 24 and subsequently failed to meet with his general manager. Claimant continued to check the schedule at work until it was apparent that the general manager had replaced Claimant with a new driver and terminated his employment.

The Division argues that sufficient evidence supported the conclusion that Claimant voluntarily left his employment by failing to meet with the general manager "even though she told him that she would not put him on the schedule until he met with her." We disagree. Given the undisputed facts in this case, we find that the Commission erred in determining that Claimant voluntarily quit because he failed to comply with the general manager's request to meet on May 29. Although Claimant evidenced an intent to work by showing up and checking the schedule, the general manager discontinued Claimant's shifts and hired a new driver. Claimant's actions did not constitute a voluntary quit because it is clear that Employer decided to terminate the employment relationship following Claimant's failure to meet with the general manager. *See Davis*, 188 S.W.3d at 100.

■ The second issue raised by the parties is whether Claimant is disqualified from unemployment benefits because Employer discharged Claimant for misconduct. Claimant contends that neither his absence from work on May 23 and 24 nor his refusal to leave his second job to meet with his general manager on May 29 falls within meaning of "misconduct" as defined by Missouri's Employment Security Law. Conversely, the Commission asserts that Claimant's failure to report for work and meet with the general manager constituted misconduct because Claimant's actions were willful and deliberate violations of Employer's reasonable directives. Although the Commission did not reach the

issue of whether Claimant's actions constituted misconduct, neither party questions our ability to review this issue on the record provided. Because the facts are not in dispute and we review the record *de novo*, we consider the parties' arguments. *See, e.g., Moore*, 49 S.W.3d at 739 (examining whether a claimant was discharged for misconduct after determining that the undisputed facts did not support the Commission's finding that the claimant voluntarily left his employment).

■ A claimant is ineligible for unemployment compensation benefits if he or she "has been discharged for misconduct connected with the claimant's work...." Mo.Rev.Stat. § 288.050.2. The Missouri Employment Security Law defines "misconduct" as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer;

Mo.Rev.Stat. § 288.030.1(23) (Cum.Supp. 2006). Under the above definition, disqualifying misconduct " 'must involve some form of willfulness.' " *Murphy v. Aaron's Auto. Prod.*, 232 S.W.3d 616, 621 (Mo.App. S.D.2007) (quoting *Scrivener Oil Co., Inc. v. Div. of Employment Sec.*, 184 S.W.3d 635, 640 (Mo.App. S.D.2006)). An employee's willful violation of an employer's reasonable work rule constitutes misconduct. *Moore*, 49 S.W.3d at 740. "A single instance of intentional disobedience of an employer's directive can constitute misconduct." *Finner v. Americold Logistics, LLC*, 298 S.W.3d 580, 584 (Mo.App. S.D. 2009). Additionally, while a claimant usu-

ally bears the burden of proving he or she is entitled to unemployment benefits, the employer bears the burden of proving that a discharge was for misconduct connected with the claimant's work. *Frisella v. Deuster Elec., Inc.,* 269 S.W.3d 895, 899 (Mo.App. E.D.2008).

Here, the undisputed facts before the Commission showed that Claimant's failure to report to work for his May 23 and 24 shifts and his failure to meet with his general manager together constituted a willful violation of Employer's reasonable directive and, accordingly, misconduct. Claimant's supervisor informed Claimant that he could not grant Claimant's request for leave over the Memorial Day weekend because no other employee was available to cover his shifts. Claimant acknowledged that it was within his supervisor's authority to grant or deny him the time off. Claimant, however, disregarded his supervisor's directive and decided not to report to work on May 23 and 24. Subsequently, the general manager called Claimant on May 29 and requested that Claimant meet with her to discuss Claimant's absences on May 23 and 24. Claimant refused to meet with his general manager at the appointed time.

Claimant contends that neither his "absence from work on May 23 and May 24 nor his refusal to abandon his [other] job . . . to speak with the General Manager on May 29 approaches the type of deliberate, unreasonable defiance of a work place rule which could constitute misconduct." In support of his argument, Claimant relies on *Dameron v. Drury Inns, Inc.,* 190 S.W.3d 508 (Mo.App. E.D.2006). *Dameron,* however, is of no assistance to Claimant. In *Dameron,* the employer discharged a claimant for missing seven work days and leaving work early due to a migraine headache. *Id.* at 510. In finding insufficient evidence of misconduct, the *Dameron* court acknowledged "the well-settled rule that absences due to illness or family emergency, where properly reported to the employer, do not constitute willful misconduct within the meaning of section 288.050.2. . . . The reason for the rule is obvious—if absences are due to illness or family emergency, a claimant has not *willfully* violated an employer's rule." *Id.* at 511 (emphasis in the original). The employer in *Dameron* only provided evidence regarding the circumstances surrounding the claimant's last absence, where the claimant left work early due to a migraine headache. *Id.* at 510. Because the claimant's migraine headache was a "legitimate medical complaint" that the claimant reported to the employer, the *Dameron* court found there was insufficient evidence of willful misconduct. *Id.* at 512. Unlike the claimant in *Dameron,* Claimant did not miss work due to "illness or a family emergency." Claimant's absence from work on May 23 and 24 was due to his decision to take his grandson to visit colleges rather than report to work despite his Employer's denial of his request for time off. Taking a grandson to visit colleges, although commendable, does not constitute an illness or family emergency. Moreover, Claimant coupled his absences on May 23 and 24 with his refusal to meet with his general manager as requested. Given the instant record, we find that the undisputed facts show that Employer discharged Claimant for his willful misconduct in failing to follow Employer's reasonable directives.

### Conclusion

We reverse and remand to the Commission with instructions to modify its decision in a manner consistent with this opinion.

GARY M. GAERTNER, JR., P.J. and MARY K. HOFF, J., Concur.