Temeshia QUALLS, Appellant,

v.

JUSTINE PETERSEN HOUSING & REINVESTMENT CORP. and Division of Employment Security, Respondents.

No. ED 94485.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 23, 2010.

Martin L. Perron, Maria V. Perron, The Perron Law Firm, PC, St. Louis, MO, for appellant.

Shelly A. Kintzel, Division of Employment Security, Jefferson City, MO, for respondent DES.

Justine Petersen Housing & Reinvestment Corp., St. Louis, MO, pro se respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Temeshia Qualls (claimant), appeals from a decision by the Labor and Industrial Relations Commission (Commission) denying her unemployment benefits. We affirm.

### Background

In March 2008, claimant began working part-time for Justine Petersen Housing & Reinvestment Corp. (employer). On February 1, 2009, claimant began working full-time as employer's development and communications manager. At this time, claimant's annual salary was $35,000.

On April 16, 2009, claimant received an email from employer's chief executive officer, Robert Boyle. The email stated that claimant's salary was to be reduced to $10,000 but her duties would remain the same. The email also stated that Boyle remained open to considering options claimant may present regarding commission related possibilities. Later that day, claimant, Boyle and employer's chief operating officer, Sheri Flanigan–Vazquez had a meeting. At that time, they discussed employer having higher expectations regarding claimant's job performance. It was also decided that claimant's salary would not be reduced.

On April 27, 2009, claimant received another email from Boyle. This email again stated that Boyle remained open to consider options claimant may present for commission related possibilities. The email further states that the arrangement between employer and claimant was not satisfactory with Boyle. The email concluded with Boyle asserting that he and claimant should "carve out some time" to discuss the matter. The email "infuriated" claimant. Although the email did not specifically discuss a salary reduction, claimant believed that Boyle was again raising the salary issue.

Claimant sent an email the same day to Boyle and copied Flanigan–Vazquez. The email states that claimant is "completely outdone by [Boyle's] actions and comments.... This employment relationship is becoming worse than any other dysfunctional relationship I have ever been involved with." The email provides that claimant is not interested "in this progressive conversation" about changing her compensation. The email furthers states, "I don't want to play your games any longer so just lay me off and I can collect benefits until I strategically calculate my next career move. Just have enough respect and care for me as a person to not contest my unemployment." The email concluded, "You should respond to me soon [ ] and preferably not in this juvenile manor via email. I can accept my full pay up through today and not return, or we can talk like adults. Unfortunately, I cannot continue to conduct any work related tasks until this matter is resolved and I apologize if this means things aren't done, but I refuse to work under these stressful

and uncertain terms. I am most accessible and prefer a call on my cell phone."

Claimant worked at home on April 28th and 29th.[1] Claimant did not notify employer that she would be working at home those two days and she did not have authorization to do so. According to claimant, she went into the office on April 30th and worked for four and one-half hours. Claimant left the office before seeing Boyle or Flanigan–Vazquez. On May 1st, claimant was unable to access employer's email. Claimant then contacted Flanigan–Vazquez with her personal email. Flanigan–Vazquez replied, stating that "[t]hree days of unexcused absence is an effective resignation" and asking claimant to return employer's laptop.

On May 12, 2009, claimant filed a claim for unemployment benefits. A deputy with the Missouri Division of Employment Security determined that claimant was disqualified because she voluntarily left work without good cause attributable to her work or employer. Claimant appealed to the Appeals Tribunal. During the hearing before an Appeals Tribunal referee, claimant and Flanigan–Vazquez testified. The referee concluded that claimant's failure "to work at her jobsite on April 28 and 29 along with her failure to inform the employer that she would not be working at her jobsite on those occasions amounts to a disregard of the employer's interest and therefore constitutes misconduct as defined in the law [ ]. The claimant, therefore, was discharged on May 1, 2009 for misconduct connected with work." Claimant appealed to the Commission. By a 2–1 vote, the Commission affirmed and adopted the decision by the Appeals Tribunal. Claimant appeals.

1. All subsequent references to April 28th, 29th, 30th and May 1st shall be referring to the year 2009.

*Discussion*

 We may modify, reverse, remand or set aside the Commission's decision only if: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. Section 288.210 RSMo 2000. In the absence of fraud, the Commission's factual findings are conclusive and binding if supported by competent and substantial evidence. *Id.; Hill v. Norton & Young*, 305 S.W.3d 491, 493 (Mo.App. E.D.2010). We defer to the Commission regarding resolution of conflicting evidence for a fact issue, weighing of evidence and witness credibility. *Hill*, 305 S.W.3d at 493. If the facts are not in dispute and the issue is construction and application of a statute, then the issue is one of law that this court reviews *de novo*. *Noah v. Lindbergh Investment*, 320 S.W.3d 212, 215 (Mo.App. E.D.2010).

 In her sole point on appeal, claimant argues that the Commission's decision that she was discharged for misconduct is not authorized by law and is not supported by sufficient competent evidence in the record. Claimant contends that there was no evidence that her discharge was for any act or omission that would constitute misconduct and justify a denial of benefits under sections 288.030.1(23) and 288.050.2 RSMo Cum.Supp.2007.

 Section 288.050.2 provides in part that "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week cred-

it and benefits. . . ." Section 288.030.1(23) defines misconduct as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Although a claimant usually bears the burden of proving entitlement to unemployment benefits, the employer bears the burden of proving that a discharge was for misconduct connected with the claimant's work. *Noah*, 320 S.W.3d at 216–17. To do so, the employer must show by a preponderance of the evidence that the claimant willfully violated the employer's rules or standards or that the claimant knowingly acted against the employer's interest. *Hill*, 305 S.W.3d at 493–94.

During the hearing before the Appeals Tribunal, claimant testified that she worked at home on Tuesday, April 28th. Claimant further testified that she did not call the office that day as she expected Boyle or Flanigan–Vazquez to call her because of the email she sent the previous day. Claimant stated that her April 27th email "put the situation back in their hands, for them to initiate a meeting in an appropriate manner to really get down to what was going on." Flanigan–Vazquez testified that she does not typically work on Tuesdays but that she was in the office on Tuesday, April 28th. Flanigan–Vazquez also stated that she has a cell phone and claimant left no messages.

Claimant further testified during the hearing that she also worked at home on April 29th. Claimant also testified that she called the office that day and was told Boyle and Flanigan–Vazquez were not there. Claimant stated that she did not leave a message when she called. Claimant also asserted that prior to April 28th she had always informed employer if she was going to work at home. When asked whether she would just not show up and work from home, claimant stated that, "I just wouldn't sporadically not show up for work, no."

Claimant's failure to go to the office for two days or inform employer she would be working at home constitutes a substantial disregard of employer's interest and claimant's duties and obligations to employer. *See Moore v. Swisher Mower & Machine Co.*, 49 S.W.3d 731, 739–40 (Mo.App. E.D. 2001). Accordingly, claimant's actions constitute misconduct as defined in section 288.030.1(23). Claimant did not go to the office on April 28th and 29th. Claimant also failed to inform employer, as was past practice, that she planned on working from home. Employer did not authorize claimant to work at home those two days. Claimant believed that because her April 27th email asked employer to call her she was not obligated to contact employer. But claimant's request for a meeting or contact does not negate her obligation to show up at the office or at least inform employer that she was going to work from home. Claimant's point is denied.

### Conclusion

The decision is affirmed.

MARY K. HOFF and PATRICIA L. COHEN, JJ., concur.