Paula ROBINSON, Appellant,

v.

COURTYARD MANAGEMENT CORPORATION,

and

Division of Employment Security, Respondents.

No. ED 94800.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 11, 2011.

Paula Robinson, St. Louis, MO, pro se.

Courtyard Management Corporation, St. Louis, MO, pro se.

Jeannie Desir Mitchell, Jefferson City, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

The claimant, Paula Robinson, appeals the decision of the Labor and Industrial Relations Commission denying her unemployment-compensation benefits because she voluntarily left her work with the employer, Courtyard Management Corporation, without good cause attributable to the work or the employer. Because the evidence before the Commission showed that

the claimant did not voluntarily leave her work, but rather was discharged for misconduct, we reverse and remand to the Commission with instructions to modify its decision in a manner consistent with this opinion.

## Factual Background

The claimant worked for the employer's hotel as a front-desk clerk, night audit. Because the claimant worked the overnight shift, she typically communicated with the general manager by leaving notes in his office. The claimant suffered a knee injury at work, and had surgery in May 2009. She returned to light-duty work in June, and to full duty in July 2009. Because of budgetary considerations, the employer modified all job duties in the hotel, including adding duties to the claimant's position. These new duties required more standing and walking for the claimant when she returned to full duty.

At the end of August, the claimant suffered pain and swelling in her knee. She submitted to the general manager an incident report about her swollen knee on August 30, 2009. The claimant saw a doctor the next day, and received a note recommending physical restrictions at work and a follow-up with an orthopedic specialist. The claimant provided the doctor's note to the general manager. The general manager left two telephone messages for the claimant on September 1st, stating that the employer could accommodate the claimant's physical restrictions. The claimant did not return the general manager's calls, but left a note for him on September 1st, stating that she would be absent "for this week 9–1–09 through [.]" The note provided no expected return date. The claimant testified that she did not state a return date because she did not know when she would return to work and that, given the knee pain she had endured,

"I think I've just had enough." She testified that she did not consider this letter as notice that she was leaving her job, but that she would return "at some point."

The employer responded via letter on September 2nd, outlining the claimant's schedule for the upcoming week, offering her restricted-duty work in accordance with the doctor's August 31st note, and requesting a work-ability evaluation from the claimant's doctor. On September 3rd, the claimant left another note for the general manager stating that she planned to follow doctor's orders, to seek the opinion of an orthopedic specialist before returning to work, and to spend "as long as it takes" to recover. The claimant did not report for her scheduled shifts on September 1st, 3rd, 4th, 6th, 7th, 8th, 9th, and 10th.

On September 8, 2009, the claimant wrote the general manager that she had an appointment with an orthopedic specialist in March 2010, and that she would return to work thereafter. She also wrote, however, that if the swelling in her knee subsided before her March doctor's appointment, she would return to work with restrictions. The claimant testified that she did not think about medical leave, but only about following her doctor's August 31st orders. The record does not contain a copy of those orders, but the testimony and other exhibits reveal that the doctor released the claimant to work with restrictions, which the employer informed the claimant on multiple occasions that it could accommodate. The employer's claims division referred the claimant to an orthopedic surgeon who evaluated her on September 10th, and released her to sedentary work. The claimant never provided this information to the employer.

The general manager left multiple telephone messages for the claimant and wrote her multiple letters in an effort to clarify her expected return date and ac-

commodate her physical restrictions. The claimant, however, did not respond to the telephone messages nor did she respond directly to the issues raised in the employer's letters. With regard to the general manager's telephone messages, the claimant testified that she "was just not going to talk to him." She never acknowledged the employer's agreement to accommodate her physical restrictions. The employer discharged the claimant on September 10, 2009 for abandoning her job after numerous missed shifts. First a deputy and the Appeals Tribunal determined that the claimant voluntarily left her work without good cause attributable to her employer. The Commission adopted the Appeals Tribunal's decision, and denied the claimant unemployment-compensation benefits. The claimant appeals.

*Standard of Review*

On appeal, this Court may modify, reverse, remand for rehearing, or set aside the Commission's decision only if the Commission acted without or in excess of its powers, the decision was procured by fraud, the facts found by the Commission do not support the award, or there was no sufficient competent evidence in the record to warrant making the award. Section 288.210 RSMo. (2000); *Noah v. Lindbergh Inv., LLC,* 320 S.W.3d 212, 215 (Mo.App. E.D.2010). In reviewing the Commission's decision, we are not bound by its conclusions of law or its application of the law to the facts. *Id.* Where, as here, the facts are not in dispute, and the issue is the construction and application of a statute, the issue is one of law that we review *de novo. Id.*

*Discussion*

The claimant challenges the Commission's determination that she left her work voluntarily without good cause attributable to the work or the employer. She also challenges the Commission's finding that she never requested leave under the Family and Medical Leave Act. Upon our review of the record, we agree that the claimant did not voluntarily leave her employment, but we find that the claimant is nonetheless disqualified from unemployment-compensation benefits because the undisputed facts showed that the employer discharged the claimant for misconduct.

A claimant is not entitled to unemployment benefits if she leaves work voluntarily without good cause attributable to such work or to the employer. Section 288.050.1(1) RSMo. (Supp.2009).[1] The voluntary-quit provision of Missouri's employment security law, like its other disqualifying provisions, must be strictly and narrowly construed in favor of finding that an employee is entitled to compensation. *Noah,* 320 S.W.3d at 215. An employee leaves work voluntarily when she leaves of her own accord, rather than being dismissed, discharged, or subjected to layoff by the employer. *Id.* Conversely, we will not deem a claimant to have left work voluntarily when the employer decides to end the employment relationship. *Id.* We will not conclude that a claimant left work voluntarily when the employer obviously discharged the employee for failing to comply with a work rule. *Id.*

The record contains insufficient evidence to support the Commission's conclusion that the claimant voluntarily left her employment. The uncontroverted facts show that the employer terminated the claimant because she repeatedly failed to report to work, and failed to respond to the employer's offers to accommodate her physical restrictions or talk with the em-

---

1. All further statutory references are to RSMo. (Supp.2009).

ployer about her status. The claimant's actions did not constitute a voluntary quit because she intended to return to work when her knee had healed, and the employer decided to terminate the employment relationship following the claimant's failure to report for work and to respond to the general manager. *See id.* at 216.

Nevertheless, the claimant is disqualified from unemployment-compensation benefits because the employer discharged her for misconduct. A claimant is ineligible for unemployment-compensation benefits where she has been discharged for misconduct connected with her work. Section 288.050.2; *Noah,* 320 S.W.3d at 216. "Misconduct" means:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(23). Work-related misconduct requires a willful violation of the employer's rules or standards, and the violation must be intended. *Dameron v. Drury Inns, Inc.,* 190 S.W.3d 508, 511 (Mo.App. E.D.2006). The employer bears the burden of proving misconduct by substantial and competent evidence. *Id.* at 512.

It is a well established rule that absences due to illness or family emergency, where properly reported to the employer, do not constitute willful misconduct within the meaning of section 288.050.2. *Id.* at 511. The reason for this rule is obvious—if absences are due to illness or family emergency, a claimant has not *will-*

*fully* violated an employer's rule. *Id.* (emphasis in original). Rather, the employee's absence is fairly attributable to circumstances beyond her reasonable control. *Id.* at 511–12.

Here, however, the employer did not discharge the claimant simply because she missed work for medical reasons. The claimant failed to report to work for eight consecutive shifts on September 1st, 3rd, 4th, 6th, 7th, 8th, 9th, and 10th. Further, she failed to respond to the employer's repeated offers to accommodate her physical restrictions and requests to discuss her employment status. These failures constituted a willful violation of the employer's reasonable rules and standards and, accordingly, constituted misconduct.

Finally, we agree with the Commission's finding that the claimant did not request medical leave. We have reviewed the entire record and conclude that the Commission's determination on this issue is supported by sufficient competent evidence. The claimant testified that she did not think about medical leave, but only about following her doctor's August 31st orders. The doctor, however, released the claimant to work with restrictions. The employer informed the claimant on multiple occasions that it could accommodate her restrictions, but the claimant did not respond. The employer's claims division referred the claimant to an orthopedic surgeon who evaluated her on September 10th, and released her to sedentary work. The claimant never provided this information to the employer.

### Conclusion

Given this record, we conclude that the employer discharged the claimant for her willful misconduct in failing to follow the employer's reasonable rules and standards. We further conclude that the claimant nev-

er requested medical leave. We reverse and remand to the Commission with instructions to modify its decision in a manner consistent with this opinion.

SHERRI B. SULLIVAN, P.J., and CLIFFORD H. AHRENS, J., concur.