**Shanna HARRIS, Appellant,**

**v.**

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 73059.**

Missouri Court of Appeals, Western District.

Oct. 4, 2011.

Mikah K. Thompson, for Appellant.

Jeannie Mitchell, for Respondent.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, ALOK AHUJA, Judge and KAREN KING MITCHELL, Judge.

VICTOR C. HOWARD, Judge.

Shanna Harris ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("the Commission") affirming the Appeals Tribunal's finding that Claimant voluntarily left her job without good cause attributable to work or her employer and was, therefore, disqualified for unemployment compensation benefits. On appeal, Claimant asserts that the Commission erred in finding that she voluntarily quit rather than finding that she was discharged and further contends that she was not discharged due to misconduct connected with work. The decision of the Commission is reversed.

## Factual and Procedural Background

Claimant was hired by Barnes–Jewish Hospital ("Employer") in 1999 and worked as a technician in the pharmacy department for approximately ten years. On November 8, 2009, Claimant began an approved medical leave pursuant to the Family and Medical Leave Act ("FMLA") due to a diagnosed stomach condition. Claimant's FMLA leave was set to expire on February 8, 2010.

Employer instructed Claimant to have her doctor fill out a form releasing her to return to work. Claimant provided the form to her doctor, and the doctor faxed it to Employer. In the form, the doctor indicated that Claimant could return to work sometime in February but did not provide a specific date. Claimant contacted the doctor's office several times asking them to provide paperwork with a specific release date and to fax it to Employer or to her. Neither Employer nor Claimant ever received updated paperwork. Employer accepted applications for Claimant's position and replaced her sometime in February. Claimant thereafter filed a claim for unemployment benefits, and Employer protested the claim. A deputy of the Division of Employment Security ("the Division") determined that Claimant was disqualified from receiving benefits because she voluntarily left work on February 8, 2010, without good cause attributable to her work or Employer.

Claimant filed an appeal, and a hearing was held before the Appeals Tribunal. Claimant testified that her FMLA leave ended on February 8, 2010. She stated that she was unable to return to work that day because her doctor did not specify the date on which she could return to work. When Claimant learned of this, she called the doctor's office repeatedly about updating the paperwork with a specific date. However, when Claimant spoke to her hu-

man resources contact with Employer, she stated that she had not received the paperwork. Claimant spoke to a secretary at the doctor's office several times after that. The secretary said she could not locate the paperwork but that she would take care of it if Claimant faxed her another copy of the paperwork. Claimant sent the paperwork to the doctor's office again. The doctor's office was supposed to fax an updated copy to Employer, but Claimant's human resources contact said that she still did not receive the paperwork.

Claimant testified that she also paid fees over the phone for the doctor's office to fax the documents to Employer and to mail a copy to Claimant, but Claimant never received her copy of the paperwork either. Claimant also explained that she never physically went to the doctor's office to try to obtain the correct paperwork because she did not have access to transportation at the time and the doctor's office was far from her home.

Tracy Cash, Claimant's immediate supervisor, also testified at the hearing. She testified that if an employee's FMLA leave was exhausted, the employee could apply for thirty days of non-FMLA leave. When asked whether Claimant applied for non-FMLA leave, Cash stated, "Not to my knowledge," and "Not to me." Cash stated that once Claimant exhausted her leave and Employer did not get the necessary information from her doctor, Employer replaced Claimant sometime in February. Cash contacted Claimant and told her that she needed to remove her belongings from her work locker. At that time, Claimant told Cash that she was trying to apply for non-FMLA leave. Claimant also spoke to Cash at some point about having a problem with the doctor's office not filling out the paperwork in a timely manner and giving her a specific date upon which she could return to work.

Claimant provided further testimony after Cash and stated that throughout the FMLA process, she was supposed to speak with an employee in the human resources department rather than with her direct supervisor. Claimant also stated that she applied for the thirty-day non-FMLA leave, but her request was not approved. Employer told Claimant that if she could get the corrected paperwork to Employer by April 6, Employer would allow her to work with a recruiter to apply for different jobs with Employer.

In its findings of fact, the Appeals Tribunal found that Claimant did not inform Employer that she was having problems getting the correct paperwork from her doctor. It further found that when Claimant did not provide the proper paperwork to Employer, it replaced Claimant at the expiration of her leave. The Appeals Tribunal concluded that Claimant's separation from work was voluntary on her part because there was work available if she had reported to work. Finally, the Appeals Tribunal concluded that Claimant voluntarily quit without good cause attributable to the work or Employer and was disqualified from receiving benefits. Claimant filed an application for review with the Commission. The Commission affirmed and adopted the decision of the Appeals Tribunal, finding it to be supported by competent and substantial evidence on the whole record and in accordance with Missouri law. Claimant's appeal from the Commission's decision followed.

### Standard of Review

The appellate court's review of the Commission's decision in an unemployment compensation case is governed by section 288.210, RSMo 2000. *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 197 (Mo.App. W.D.2007). Section 288.210 provides:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

■■■ An appellate court " 'must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, *i.e.*, whether the award is contrary to the overwhelming weight of the evidence.' " *Reno v. Tyson Poultry, Inc.*, 204 S.W.3d 347, 350 (Mo.App. W.D.2006) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003)). In reviewing the Commission's decision, an appellate court must "view the evidence objectively, not in the light most favorable to the decision of the Commission." *Id.* However, "[o]n matters of witness credibility and resolution of conflicting evidence, the appellate court defers to the Commission's determinations." *Ayers*, 211 S.W.3d at 198.

■■■ While the appellate court gives deference to the Commission's findings of fact, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts. *Lindsey v. Univ. of Mo.*, 254 S.W.3d 168, 170 (Mo.App. W.D.2008). The question of whether an employee left work voluntarily or was discharged is generally a factual determination. *Johnson v. Div. of Emp't Sec.*, 318 S.W.3d 797, 799 (Mo.App. W.D. 2010). "However, the standard of review is *de novo* when the issue is whether the facts found by the Commission can, as a matter of law, be considered to constitute a voluntary departure from employment." *Id.*

## Discussion

■■■ In her first point on appeal, Claimant contends that the Commission erred in denying her unemployment benefits because the evidence showed that she was discharged from her employment and that she did not voluntarily quit. The issue Claimant presents is governed by section 288.050, RSMo Cum.Supp.2010, which provides in pertinent part that:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer.

§ 288.050.1(1). The claimant generally has the burden of showing that he is eligible for benefits. *Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App. W.D. 2006). Therefore, "if the receipt of benefits is challenged by the employer, for the employee's voluntarily leaving employment without good cause, the employee has the burden of showing that either he did not leave employment voluntarily, or, that if he did, he did so with good cause." *Id.*

The first question we must address under the statute is whether Claimant left

work voluntarily, because "those who leave work involuntarily are never disqualified from eligibility under [section 288.050.1(1) ]." *See Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 598 (Mo. banc 2008) (holding that an employee did not leave work voluntarily when she was discharged for missing work due to a medical emergency, but the employee had notified the employer in compliance with its absence policy). Following the Missouri Supreme Court's opinion in *Difatta–Wheaton*, Missouri's appellate courts have further construed the meaning of "left work voluntarily." This court recently noted that it is difficult to apply the phrase "left work voluntarily" where "the employee has conscientiously provided notice of the absence, purports to want to be at work, and claims constraint from attendance by circumstances such as sickness or some other difficulty." *See Johnson*, 318 S.W.3d at 801 (observing that the phrase "left work voluntarily" is "not so easily understood in the context of an absent employee whose actions have indicated a desire to keep the job"). Ultimately, this court found that "[t]he concept of 'voluntary quit' should ... be reserved for those cases in which the employee not only does not show up, but also impliedly rejects the employment and the employer by some action such as failing to provide notification of the absence." *Id.* at 804.

Moreover, the language of section 288.050.1(1), like the other disqualifying provisions of Missouri's employment security law, "must be strictly and narrowly construed in favor of finding that an employee is entitled to compensation." *Robinson v. Courtyard Mgmt. Corp.*, 329 S.W.3d 736, 739 (Mo.App. E.D.2011). The court in *Robinson* further stated that it would not find that a claimant left work voluntarily "when the employer decide[d] to end the employment relationship," or "when the employer obviously discharged the employee for failing to comply with a work rule." *Id.*

Based on an examination of the whole record, we find that there is insufficient competent and substantial evidence to support the Commission's finding that Claimant voluntarily left her employment. First, the Division argues that Claimant left work voluntary in that she essentially abandoned her job by choosing not to provide Employer with the proper paperwork including a specific date upon which she could return to work. However, Claimant had her doctor timely supply the paperwork at the end of her FMLA leave. The problem was that the doctor gave a general time frame during which she could return to work instead of a specific date. When a human resources employee informed Claimant of this, she made repeated phone calls to the doctor's office and worked with the secretary in the doctor's office to ensure that the proper paperwork was sent to Employer. When the secretary said that she could not locate the paperwork, Claimant sent her a new copy. Claimant also paid faxing and mailing fees to have the paperwork sent to herself and Employer.

The Division argues that Claimant failed to do everything she could to retain her job because she did not physically go to the doctor's office and wait there until they provided her with the necessary information. However, Claimant explained at the hearing that she had never had a problem getting documents faxed to her Employer from a doctor's office before. The doctor's office was far from her home, and she temporarily lacked transportation. By the time it became evident that the doctor's office was not rectifying the problem, Claimant learned that she had already been replaced by a new employee. We do not believe the circumstances show that she was so unreasonably lax or irresponsi-

ble that this could be considered a voluntary relinquishment of the job.

The Division next asserts that Claimant was not discharged when Employer replaced her because she was never told that she was discharged, and Employer stated in its letter of protest that Claimant was still "on the payroll." ' However, there is no evidence in the record to indicate that Claimant was still receiving compensation from Employer after her position was filled by a new employee. Furthermore, the evidence shows that Claimant was informed that she had been replaced and was told by her supervisor to remove her belongings from the workplace. These circumstances indicate that Employer chose to discharge Claimant when she was unable to provide the proper paperwork.

Finally, the Division argues that Claimant was not discharged by Employer when she was replaced because Employer gave Claimant a deadline of April 6 to turn in a proper medical release from her doctor. We find that the April 6 date is irrelevant to whether Claimant was discharged or voluntarily left her position as a pharmacy technician. Claimant was discharged by Employer in February when Employer replaced her and told her to pick up her belongings. Employer then told Claimant that it would connect her with a recruiter and she could apply for other jobs with Employer if she turned in the medical release form by April 6. However, even if she had done this, it would not change the fact that Claimant was discharged from her current position. Moreover, there was no guarantee that Claimant would be able to obtain a new position with Employer; she was only told that she would be eligible to *apply* for a new job with Employer.

Claimant's actions indicate that she had a desire to keep her job and conscientiously sought to retain it. When her contact in human resources informed her of the problem with the paperwork, Claimant made repeated attempts to fix the problem. She kept in contact with both the doctor's office and her human resources contact and applied for thirty days of non-FMLA leave. Claimant sent a new set of paperwork to the doctor's office and paid fees to have the new set faxed to Employer and mailed to her. Claimant stated that she did not have access to transportation to physically get to the doctor's office at that time. When the doctor's office did not send the updated paperwork, Employer chose to discharge Claimant. Because Claimant's actions show that she made reasonable efforts to maintain her employment, but Employer chose to replace Claimant when it did not receive the proper paperwork from her doctor, we find that Claimant was discharged and did not voluntarily leave work. The Commission's finding that Claimant voluntarily quit is reversed.

■■■■ In addition, we conclude that Claimant's failure to provide Employer with a specific date upon which she could return to work did not constitute misconduct. If an employer argues that the claimant was discharged for misconduct, the burden is on the employer to prove misconduct occurred. *White v. St. Louis Teachers Union*, 217 S.W.3d 382, 388 (Mo. App. W.D.2007). Misconduct is defined as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

§ 288.030.1(23), RSMo Cum.Supp.2010. "[I]n order for misconduct to be found, there must be a finding of some intent on the part of the discharged employee or repeated negligent acts amounting to culpable conduct." *Bostic v. Spherion Atlantic Workforce,* 216 S.W.3d 723, 725 (Mo. App. W.D.2007).

There is no evidence in the record to indicate that Claimant's failure to provide Employer with the proper paperwork was intentional or negligent in such degree as to manifest culpability. Claimant's doctor filled out the paperwork and failed to supply the necessary information. Once Employer informed Claimant of the problem, she made repeated efforts to obtain the correct information from the doctor's office. The doctor's office never provided Employer or Claimant with the necessary information despite multiple requests from Claimant. Claimant simply was unable to provide Employer with the proper paperwork, through no fault of her own. Therefore, there is no evidence in the record from which we could uphold the Commission's decision based on a finding of misconduct.

The decision of the Commission is reversed.

All concur.