Robert WOOD, Appellant,

v.

**KUHLMANN SUPPLY COMPANY, INC., and Division of Employment Security, Respondents.**

No. ED 96694.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 27, 2011.

---

Ron Ribaudo, Valley Park, MO, for Appellant.

Jeannie Desir Mitchell, Jefferson City, MO, for Respondent.

ROY L. RICHTER, Judge.

Robert Wood ("Claimant") appeals from the decision of the Labor and Industrial Relations Commission ("the Commission") denying him unemployment benefits following the conclusion of his employment with Kuhlmann Supply Company, Inc. ("Employer"). On appeal, Claimant argues the Commission erred in finding Claimant voluntarily left work without good cause attributable to the work or Employer's conduct. Because the evidence before the Commission showed that Claimant did not voluntarily leave work, but rather was discharged, we reverse and remand to the Commission.

## I.  BACKGROUND

Claimant began work for Employer as a sales representative in September 2008.

In that capacity, Claimant was paid by commission and earned 40% of the profit on all of his sales. In order to integrate the pay cycle with a higher degree of predictability, Employer established a compensation plan with Claimant whereby Claimant received a bi-monthly draw against his commission in a recurring amount. If Claimant's commission exceeded his standard draw amount, he was paid that additional amount; if Claimant's commission was less than his draw amount, he still received his standard draw. As of October 2010, Claimant was drawing approximately $1600 in net pay on both the first and fifteenth days of each month.[1] At no point during Claimant's time working for Employer had either party deviated from this compensation plan.

Throughout the first half of October 2010, Claimant had five days where he was ill and absent from work. Those absences, combined with Employer's professed dissatisfaction with Claimant's productivity, diligence, and punctuality, convinced Employer that Claimant should not be paid. So, on Wednesday, October 13, Employer's president, Rick Kuhlmann ("Mr. Kuhlmann"), notified Employer's accounting manager, Theresa Higgins ("Ms. Higgins"), to withhold Claimant's entire mid-month draw scheduled to be paid on Friday, October 15. Claimant was not notified by Employer of this decision, nor was he asked to come in to speak with Employer prior to the elimination of his paycheck. Consequently, Claimant failed to receive his anticipated mid-month paycheck.

On the morning of Friday, October 15, Claimant called Mr. Kuhlmann to find out why he had not been paid. Mr. Kuhlmann informed Claimant that the failure to re-ceive a paycheck was not a mistake; it was a unilateral decision made by Mr. Kuhlmann based upon his view of Claimant's efforts and results. Specifically, Mr. Kuhlmann asserted, "I'm not going to pay you for not working for us." Claimant was then asked to come into work to further discuss the situation.

During their face-to-face meeting that afternoon, Mr. Kuhlmann reiterated to Claimant his general displeasure with Claimant's effort and stated, as a result, he was not going to pay Claimant. As they spoke, options were discussed regarding Claimant's pay arrangement and work schedule going forward. Among the alternatives discussed were cutting Claimant's regular draw in half (down to $25,000 annually) or removing Claimant's draw entirely and moving him to straight commissions. In the end, no decision was reached. As the meeting adjourned, Mr. Kuhlmann informed Claimant that he remained unsure as to whether Claimant would be paid for the first half of October and unsure about any other changes that would be made going forward. Claimant was told to go home and think about things over the weekend and come in to work again on Monday, October 18, to discuss the situation further.

That weekend, on Sunday, October 17, Claimant filed for unemployment benefits with the Division of Employment Security ("the Division"), contending he was discharged when Employer failed to pay him. On Monday, October 18, Claimant called and informed Employer that he was not going to make the lengthy commute to work if he was not getting paid. Accordingly, Claimant failed to come into work on Monday, October 18, and Tuesday, October 19. Employer became aware that Claimant had filed for unemployment ben-

1. Claimant's draw on commissions amounted to $50,000 per year at the cessation of his employment.

efits after receiving notice from the Division on Wednesday, October 20. In response, Employer immediately removed Claimant's access to all of Employer's computer systems.

On October 29, 2010, a deputy with the Division issued his determination that Claimant was disqualified from unemployment benefits because he left his work voluntarily without good cause attributable to the work or Employer. Claimant appealed and a hearing was held before an Appeals Tribunal referee. The referee concluded that Claimant was qualified for benefits because Claimant was discharged by Employer on October 20, 2010, when Claimant was excluded from Employer's computer system. Employer appealed to the Commission, who reversed the decision of the referee, with one member dissenting. The Commission, like the deputy for the Division, concluded that Claimant had left his work voluntarily without good cause attributable to the work or Employer. Claimant now appeals.

## II. DISCUSSION

### Standard of Review

The Missouri Constitution, Article V, Section 18, directs this Court to determine whether the Commission's award is "supported by competent and substantial evidence upon the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). Furthermore, when reviewing the Commission's decisions, this Court:

[S]hall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 288.210 RSMo 2000; *Knobbe v. Artco Casket Co.*, 315 S.W.3d 735, 738–39 (Mo.App. E.D.2010).[2]

We review *de novo* the Commission's conclusions of law and its application of the law to the facts, without deference to the Commission. *Difatta–Wheaton v. Dolphin Capital Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). However, we will defer to the Commission on issues of fact, the credibility of witnesses, and the weight to be given to conflicting evidence. *Hager v. Syberg's Westport*, 304 S.W.3d 771, 773 (Mo.App. E.D.2010). One common factual determination of the Commission is whether an employee voluntarily left his employment or was discharged. *Lindsey v. Univ. of Mo., Div. of Employment Sec.*, 254 S.W.3d 168, 171 (Mo.App. W.D.2008). In those instances, we review to ensure the Commission could have reasonably made its findings and that those findings were supported by substantial and competent evidence in the record. *Valdez v. MVM Sec., Inc.*, 349 S.W.3d 450, 454 (Mo.App. W.D.2011).

### Analysis

Claimant raises three points on appeal. In his first point, Claimant contends that the Commission erred in denying his claim for unemployment benefits because Claimant did not voluntarily leave his work, but was instead discharged. Because we find this point dispositive, it is not necessary to address the allegations of error raised in his second and third points.

Under Missouri law, there are two ways in which a claimant may lose his or her job

---

**2.** All subsequent statutory references are to RSMo 2000, unless otherwise indicated.

and not be entitled to unemployment benefits. The first occurs when "a claimant has been discharged for misconduct connected with the claimant's work." Section 288.050.2. Under that prong, misconduct will be found and no benefits paid when a claimant has exhibited:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Section 288.030.1(23). The second way in which a claimant may fail to qualify for unemployment benefits is known as a voluntary quit. In that circumstance, a claimant will be deemed ineligible for benefits if the claimant is found to have left work voluntarily without good cause attributable to such work or to the employer. Section 288.050.1(1). Because the Commission found Claimant voluntarily quit, we will address that contention first.

We construe the disqualifying provisions of the Missouri Employment Security Law strictly and narrowly, in favor of a finding that an employee is entitled to compensation. *Noah v. Lindbergh Inv., LLC*, 320 S.W.3d 212, 215 (Mo.App. E.D.2010); *Mo. Div. of Employment Sec. v. Labor & Indus. Relations Comm'n of Mo.*, 651 S.W.2d 145, 148 (Mo. banc 1983). An employee leaves work voluntarily when "he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer." *Noah*, 320 S.W.3d at 215 (internal quotations omitted). Conversely, "an employee will not be held to have left voluntarily when the

employer decides to end the employment relationship." *Id.* (quoting *Davis v. School of the Ozarks, Inc.*, 188 S.W.3d 94, 100 (Mo.App. S.D.2006)). Along those lines, we will not find that an employee voluntarily left work when the employer clearly discharged the employee for failing to comply with a work rule. *Moore v. Swisher Mower & Machine Co., Inc.*, 49 S.W.3d 731, 739 (Mo.App. E.D.2001).

In this case, there was insufficient evidence in the record to support the Commission's finding that Claimant voluntarily left his employment. The uncontroverted facts show that Employer's president, Mr. Kuhlmann, made the unannounced, unilateral decision to withhold Claimant's midmonth paycheck just two days before it was to be paid. Mr. Kuhlmann's underlying reasons for his decision were conveyed to Ms. Higgins when he instructed her not to pay Claimant. Mr. Kuhlmann stated Claimant should not be paid because he was not working, was not visiting customers, was missing work days, and had declining sales. Additionally, during the conversation between Claimant and Mr. Kuhlmann on October 15, 2010, Mr. Kuhlmann reiterated that he was not paying Claimant because of his belief that Claimant's decreased effort was leading to diminishing returns. The meeting concluded with no promise to pay Claimant in the future. All of the evidence presented militates towards a finding that Claimant did not leave work voluntarily, but was discharged by Employer's steadfast refusal to pay.

The Division argues that Claimant was not discharged because the Friday, October 15 meeting was simply an ongoing negotiation and Claimant was cognizant of that fact when he left work that day. Thus, the Division asserts, Claimant made a conscious decision to not return to work the following Monday. We are not persuaded by this argument for two reasons.

First, although Claimant was an at-will employee who worked on commissions, Employer could not have reasonably expected to have had the right to unilaterally alter or altogether eliminate Claimant's paycheck, while still expecting Claimant to report to work.

Second, we disagree with the Division's assertion that this was simply a negotiation because such a finding is unsupported by the evidence. The meeting was not a negotiation, but was simply a vehicle for Employer to outline Claimant's work-related shortcomings and the reasons Claimant was no longer being paid. Employer alleged Claimant missed too much work, was not diligent during the times he was at work, and, overall, was not meeting standards. As Mr. Kuhlmann explained to Claimant the reason his paycheck was being withheld, Mr. Kuhlmann stated, "I'm not going to pay you for not working for us." We agree with Mr. Kuhlmann and find that by deliberately refusing to pay Claimant, Employer effectively discharged Claimant as of October 15, 2010.

Having determined that Claimant was discharged, we would normally look to whether the discharge was the result of Claimant's misconduct. Here, however, the Commission never made a finding regarding misconduct. Accordingly, we remand to the Commission to make a finding of whether Claimant's discharge was for misconduct connected with Claimant's work.

### III. CONCLUSION

We reverse and remand for proceedings consistent with this decision.

CLIFFORD H. AHRENS, P.J., and GARY M. GAERTNER, JR., J., concur.